Filed 6/18/13; pub. & mod. order (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ARLYNE M. DIAMOND,<br><br>　　　Petitioner,<br><br>　　v.<br><br>THE SUPERIOR COURT OF<br>SANTA CLARA COUNTY,<br><br>　　　Respondent;<br><br>CASA DEL VALLE HOMEOWNERS<br>ASSOCIATION,<br><br>　　　Real Party in Interest. | 　H038734<br>　(Santa Clara County<br>　Super. Ct. No. CV099053) |

## I.  INTRODUCTION

Petitioner Arlyne M. Diamond owns a townhouse-style unit in the Casa Del Valle common interest development, which is managed by real party in interest Case Del Valle Homeowners Association (Association).  After Diamond failed to pay a $9,750 special assessment by the due date, the Association's collection efforts included recording an assessment lien on her townhouse property and filing the instant action for judicial foreclosure.  Diamond moved for summary judgment on the ground that the Association could not foreclose because the assessment lien was not valid, since the Association had not complied with the pre-lien and pre-foreclosure notice requirements set forth in the

Davis-Stirling Common Interest Development Act (Davis-Sterling Act), Civil Code sections 1367.1 and 1367.4.[1] The trial court denied the summary judgment motion, finding that the Association had substantially complied with the statutory notice requirements.

On appeal, Diamond argues that a homeowners' association must strictly comply with the notice requirements of sections 1367.1 and 1367.4 in order to perfect an assessment lien and foreclose on a homeowner's property in a common interest development. For the reasons stated below, we agree. Since the Association's failure to strictly comply with all of the statutory notice requirements is undisputed, we will issue a peremptory writ of mandate directing the trial court to vacate its order denying Diamond's motion for summary judgment and enter a new order granting the motion.

## II. FACTUAL BACKGROUND

Our factual summary is drawn from Diamond's separate statement of facts, the Association's response, and the evidence submitted by the parties in connection with Diamond's motion for summary judgment.

In 1978, Diamond purchased a unit in the Casa Del Valle common interest development, which is managed by the Association through its board of directors (Board). The Association's current governing documents are the 1998 Amended and Restated Covenants, Conditions and Restrictions (CC&Rs). The CC&Rs provide that the Board may levy a special assessment to raise funds for "unexpected operating or other costs . . . or such other purposes as the Board in its discretion considers appropriate." Where a levied assessment is delinquent, the CC&Rs also provide that the Association "may record a notice of delinquent Assessment and establish a lien against" the owner's lot, and may enforce the assessment lien by any manner permitted by law, including judicial foreclosure.

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

In 2006, the Board decided to replace all of the roofs in the development and engage in other repair projects. Since the Association's reserve funds were insufficient, the Board determined that a special assessment was needed to raise funds to pay for the roof replacement and the repair projects. In March 2007, a special assessment in the amount of $9,750 per unit was approved in a special election by a majority of the voting members of the Association.

Due to her financial situation, Diamond was unable to pay the special assessment by the May 2007 due date. She then attempted to negotiate a payment plan by contacting members of the Board. According to Diamond, her communications with the Board's president resulted in a payment plan agreement that was reached during their meeting on May 14, 2007. Diamond believed that payment plan agreement required her to execute a promissory note for $9,750 plus interest, make a down payment of $1,000, and make monthly payments of $100 until her financial situation improved and she could make larger monthly payments.

After Diamond made the $1,000 down payment and a couple of monthly payments, she received a June 19, 2007 pre-lien letter from the Association's attorney. The letter did not refer to the payment plan that Diamond believed she had negotiated with the Board president. Instead, the letter stated in part: (1) the total outstanding charges were $10,225; (2) the Association would "record a Notice of Assessment (lien claim)" against her "condominium unit" if her account was not brought current within 30 days; (3) she was entitled to inspect the Association's accounting books and records; (4) she could submit a written request to the Board to discuss a payment plan; (5) she had the right to dispute the assessment debt by submitting a written request for dispute resolution to the Association pursuant to the Association's " 'meet and confer' program" or, alternatively, she could request alternative dispute resolution with a a neutral third party pursuant to section 1369.510; and (6) "IMPORTANT NOTICE: IF YOUR SEPARATE INTEREST IS PLACED IN FORECLOSURE BECAUSE YOUR ARE

3

[*sic*] BEHIND IN YOUR ASSESSMENTS, IT MAY BE SOLD WITHOUT COURT ACTION."

Diamond responded to the pre-lien letter by sending the Association's attorney a letter dated July 18, 2007, in which she stated that the Board president had agreed to a payment plan due to her hardship situation, she had complied with the payment plan, and she had offered to sign a promissory note "in lieu of a lien." She also advised that she could not pay the special assessment without the payment plan.

On July 26, 2007, the Association recorded a notice of assessment against Diamond's townhouse property, which stated that the amount of the assessment lien was $12,010.23. The Association sent a copy of the recorded notice of assessment to Diamond 28 days later as an enclosure in the August 22, 2007 letter mailed to her by the Association's attorney. The August 22, 2007 letter also informed Diamond that the Board had approved a 12-month payment plan that consisted of a monthly payment of $989.17 and maintenance of the assessment lien on her property until her account was paid in full.

Diamond met with the Association's attorney on September 10, 2007, regarding her proposal for a payment plan. As indicated in the September 13, 2007 letter to Diamond, the Association's attorney requested that Diamond supply documentation regarding her financial condition and corroboration of her claim that she had previously reached a payment plan agreement with the Board president. Thereafter, the Board offered Diamond a different payment plan, as stated in the October 18, 2007 letter from the Association's attorney. Although the copy of the October 18, 2007 letter included in the record is incomplete, it appears that the Board accepted Diamond's prior down payment of $1,000, her prior monthly payments of $100 for five months in 2007, and agreed to accept monthly payments of $250 for the two months remaining in 2007. The balance of the proposed payment plan is not reflected in the record.

Now represented, Diamond sent an October 23, 2007 letter to the Association's attorney requesting that the parties meet and confer and stating that if the matter could not be resolved, she requested alternative dispute resolution, specifically mediation, as provided in section 1367.1, subd. (c)(1)(B). The Association rejected Diamond's request to meet and confer and also rejected her request for alternative dispute resolution, stating in its letter of November 21, 2007, that "the [Association] has already met and conferred with Dr. Diamond on September 10, 2007. Dr. Diamond is entitled to either meet and confer with the [Association] or engage in Alternative Dispute Resolution, but not both." The November 21, 2007 letter also returned three $100 checks that Diamond had sent to the Association.

The Board met in executive session on November 7, 2007, to vote on whether to initiate foreclosure proceedings on Diamond's property. Foreclosure proceedings were approved by a majority vote, as stated in the minutes of the executive session.

### III. PROCEDURAL BACKGROUND

#### A. *The Complaint*

On November 15, 2007, the Association filed a complaint against Diamond seeking judicial foreclosure on her Casa Del Valle property and application of the sales proceeds to pay a judgment in the amount of $10,064.88 plus costs, interest, and attorney's fees. The Association personally served the summons, complaint, and notice of Board action (decision to initiate foreclosure proceedings) on Diamond on December 9, 2007.

#### B. *The Motion for Summary Judgment*

Diamond subsequently filed a motion for summary judgment, combined with a "motion to expunge lien," in April 2012. She generally argued that it was undisputed that the Association had failed to comply with all of the notice requirements set forth in sections 1367.1 and 1367.4 that a homeowners association must meet in order to perfect an assessment lien and foreclose on a homeowner's property, and absent compliance with

5

the statutory notice requirements, the Association's foreclosure action lacked merit as a matter of law.

Specifically, Diamond asserted that the Association had (1) failed to send her a copy of the recorded notice of delinquent assessment by certified mail within 10 days of the recording (§ 1367.1, subd. (d)); (2) failed give her a pre-foreclosure notice of her right to demand alternative dispute resolution (§§ 1367.1, subd. (c)(1)(B), 1367.4, subd. (c)(1)); (3) failed to record the Board's executive session vote to initiate foreclosure proceedings on her property in the minutes of the next meeting of the Board open to all members (§ 1367.4, subd. (c)(2)); and (4) failed to personally serve her with the notice of the Board's vote to foreclose prior to commencement of the foreclosure action (§ 1367.5, subd. (c)(3)).

Since the Association had failed to comply with these statutory notice requirements, Diamond argued that the lien was "invalid to the extent it includes any sum other than the principal amount of the lien, less all sums paid to date by [Diamond]" and therefore the lien should be expunged and summary judgment granted.

## C. *Opposition to the Motion for Summary Judgment*

In opposition to the motion for summary judgment, the Association argued that the evidence showed that it had sufficiently complied with the statutory notice requirements and therefore the motion should be denied.

First, although the Association admitted that it had not sent Diamond a copy of the recorded notice of delinquent assessment by certified mail within 10 days of the recording, as required by section 1367.1, subdivision (d), the Association argued that this was a "technical violation" because Diamond had received actual notice and the Civil Code did not provide any consequences for the violation.

Second, the Association argued that it had given Diamond adequate pre-foreclosure notice of her right to demand alternative dispute resolution, as required by sections 1367.1, subdivision (c)(1)(B) and 1367.4, subdivision (c)(1), in its pre-lien letter

6

of June 19, 2007. According to the Association, the Civil Code does not require separate notices of the right to pre-lien or pre-foreclosure alternative dispute resolution.

Third, the Association also admitted that it had failed to record the Board's executive session vote to initiate foreclosure proceedings on Diamond's property in the minutes of the next meeting of the Board open to all members, as required by section 1367.4, subdivision (c)(2). However, the Association contended that under the circumstances of this matter, including its efforts to negotiate a payment plan with Diamond, "this technical violation should be excused by the court."

Finally, the Association disputed Diamond's claim that it had failed to personally serve her with the notice of the Board's vote to foreclose prior to commencement of the foreclosure action, as required by section 1367.4, subdivision (c)(3). The Association explained that it had complied with this requirement by personally serving her with the notice of the Board's vote to foreclose along with the summons and complaint on December 9, 2007. The Association further explained that section 1367.4, subdivision (c)(3) does not specify the timing for serving the notice of the Board's vote to foreclose.

### D. *The Trial Court's Order*

The record on appeal does not contain a signed and filed court order ruling on Diamond's motion for summary judgment. The only record we have of the trial court's ruling is a copy of the undated tentative ruling and the reporter's transcript of the August 16, 2012 hearing on the motion. However, the parties have not raised any issues with respect to the omission of a signed and filed order denying the motion for summary judgment.

In its tentative ruling, the trial court denied the motion for summary judgment and the motion to expunge the lien, stating in part: "[Diamond] fails to meet her initial burden to produce evidence that [the Association's] action is barred by the provisions of Civil Code sections 1367.1 and 1367.4. [The Association] substantially complied

7

with the requirements of section 1367.1, subdivision (d) because [Diamond] received actual notice of the fact that a lien was recorded on her property in sufficient time to allow her to work with [the Association] to resolve this dispute before [the Association's] lawsuit was filed.  [Citations.]  Prior to initiating this action, [the Association] also complied with the requirement of sections 1367.1, subdivision (c)(1)(B) and 1367.4, subdivision (c)(1) to provide notice of [Diamond's] right to meet and confer or participate in ADR.  [Citation.]  Additionally, [the Association] complied fully with section 1367.4, subdivision (c)(3)'s requirement that [Diamond] receive notice of the board's decision to initiate the action.  [Citation.]  Finally, insofar as [the Association] failed to comply strictly with the requirements of section 1367.4, subdivision (c)(2), the statutory purpose to protect [Diamond's] right to privacy was not frustrated by the failure of the board to note its decision to foreclose in the minutes of a regular board meeting.  Insofar as subdivision (c)(2) also functions to effectuate the requirements of Civil Code section 1363.05, subdivision (c), [Diamond] was not aggrieved by the board's omission any differently than any other member of the association, and her remedy as a member of the association was to pursue a timely action under Civil Code section 1363.09."

The trial court adopted its tentative ruling at the conclusion of the August 16, 2012 hearing on the motion for summary judgment.

## IV.  DISCUSSION

After the trial court denied her motion for summary judgment, Diamond filed a petition for a writ of mandate directing the trial court to vacate its order and enter a new order granting her motion for summary judgment.  The Association filed preliminary opposition to the petition, to which the Diamond replied.  We issued an order to show cause why a peremptory writ should not issue as requested in the petition for a writ of mandate and a temporary stay of all trial court proceedings while the writ petition was pending.  Having received further briefing from the parties and granted the application of

the American Association of Retired Persons (AARP) for leave to file an amicus curiae brief in support of petitioner, and having provided an opportunity for oral argument, we turn to the merits of the writ petition, beginning with our standard of review.

### A. *Propriety of Writ Relief and the Standard of Review*

An order denying a motion for summary judgment may be reviewed by way of a petition for a writ of mandate. (Code Civ. Proc., § 437c, subd. (m)(1).) "Where the trial court's denial of a motion for summary judgment will result in a trial on nonactionable claims, a writ of mandate will issue. [Citation.]" (*Prudential Ins. Co. of America, Inc. v. Superior Court* (2002) 98 Cal.App.4th 585, 594 (*Prudential*).)

The standard of review for an order granting a motion for summary judgment is de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*).) The trial court's stated reasons for granting summary judgment are not binding on the reviewing court, "which reviews the trial court's ruling, not its rationale. [Citation.]" (*Ramalingam v. Thompson* (2007) 151 Cal.App.4th 491, 498.)

In performing its independent review, the reviewing court applies the same three-step process as the trial court. "Because summary judgment is defined by the material allegations in the pleadings, we first look to the pleadings to identify the elements of the causes of action for which relief is sought." (*Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 159 (*Baptist*).)

"We then examine the moving party's motion, including the evidence offered in support of the motion." (*Baptist*, *supra*, 143 Cal.App.4th at p. 159.) A defendant moving for summary judgment has the initial burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (o); *Aguilar, supra*, 25 Cal.4th at p. 850.)

If the defendant fails to make this initial showing, it is unnecessary to examine the plaintiff's opposing evidence and the motion must be denied. However, if the moving

9

papers make a prima facie showing that justifies a judgment in the defendant's favor, the burden shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra*, 25 Cal.4th at p. 849; *Kahn v. East Side Union High School Dist*. (2003) 31 Cal.4th 990, 1002-1003.)

In determining whether the parties have met their respective burdens, "the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citations], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Aguilar, supra*, 25 Cal.4th at p. 843.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850, fn. omitted.) Thus, a party "cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact. [Citation.]" (*LaChapelle v. Toyota Motor Credit Corp.* (2002) 102 Cal.App.4th 977, 981.)

In the present case, defendant Diamond moved for summary judgment on the ground that the foreclosure action lacks merit because the Association cannot establish a valid assessment lien that is enforceable in a foreclosure action, due to its undisputed failure to comply with all of the notice requirements set forth in sections 1367.1 and 1367.4. Our independent review of the merits of the summary judgment motion therefore begins with an overview of the statutory requirements for foreclosure under the Davis-Sterling Act, including the statutory notice requirements.

## B. *Foreclosure Under the Davis-Sterling Act*

### 1. The Association's Authority to Collect an Assessment Debt

"In 1985, the Legislature enacted the [Davis-Stirling Act] as division 2, part 4, title 6 of the Civil Code, 'Common Interest Developments' ([§§] 1350-1376; Stats. 1985, ch. 874, § 14, pp. 2774-2787), which encompasses community apartment projects,

10

condominium projects, planned developments and stock cooperatives ([§] 1351, subd. (c)).[2] 'A common interest development shall be managed by an association which may be incorporated or unincorporated. The association may be referred to as a community association.' ([§] 1363, subd. (a).)" (*Lamden v. La Jolla Shores Clubdominium Homeowners Assn*. (1999) 21 Cal.4th 249, 253, fn. 1.)

An association's authority to levy assessments is set forth in section 1366, subdivision (a), which provides, with certain exceptions not relevant here, that "the association shall levy regular and special assessments sufficient to perform its obligations under the governing documents and [title 6]." "A condominium assessment becomes a debt of the owner when the assessment is levied by the condominium association. ([§] 1367.1, subd. (a).) 'The debt is only a personal obligation of the owner, however, until the community association records a "notice of delinquent assessment" against the owner's interest in the development. Recording this notice creates a lien and gives the association a security interest in the lot or unit against which the assessment was imposed.' ([Citation]; see [§] 1367, subd. (d).)." (*Diamond Heights Village Assn., Inc. v. Financial Freedom Senior Funding Corp.* (2011) 196 Cal.App.4th 290, 300-301 (*Diamond Heights*).) "It is generally understood that a lien is not a debt but acts as 'security for payment of a debt or other obligation.' ([Citation]; see [§] 2872.) . . . An assessment lien may be enforced 'in any manner permitted by law,' including judicial foreclosure. ([§] 1367, subd. (e).)"[3] (*Diamond Heights*, *supra*, 196 Cal.App.4th at p. 301.)

---

[2] Effective January 1, 2014, the Davis-Sterling Act has been comprehensively reorganized and recodified, including the repeal of sections 1367.1 and 1367.4. (Stats. 2012, ch. 180, § 1; Legis. Counsel's Dig., Assem. Bill No. 805 (2011-2012 Reg. Sess.).)

[3] The association may not foreclose on an assessment lien unless the amount of the delinquent assessment secured by the lien exceeds $1,800 or the assessment is more than 12 months delinquent. (§ 1367.4, subd. (b)(2).)

Where, as here, the assessment lien was recorded after January 1, 2003, sections 1367.1 and 1367.4 expressly impose certain conditions that an association must satisfy before the assessment lien may be enforced by judicial foreclosure. (§ 1367.1, subd. (m).) These conditions include notice requirements, beginning with the pre-lien notice mandated by section 1367.1, subdivision (a). The association may initiate foreclosure of a lien for a delinquent assessment only where the lien "has been validly recorded." (§1367.4, subd. (c)(2).)

## 2. Pre-Lien Notice

After January 1, 2006, "the decision to record a lien for delinquent assessments shall be made only by the board of directors of the association . . . . The board shall approve the decision by a majority vote of the board members in an open meeting. The board shall record the vote in the minutes of that meeting." (§ 1367.1, subd. (c)(2).)

Before recording a lien for a delinquent assessment, the association must give the homeowner an opportunity to engage in dispute resolution. Section 1367.1, subdivision (c)(1)(A) provides: "Prior to recording a lien for delinquent assessments, an association shall offer the owner and, if so requested by the owner, participate in dispute resolution pursuant to the association's 'meet and confer' program required in Article 5 (commencing with Section 1363.810) of Chapter 4." (§ 1367.1, subd. (c)(1)(A).)

The association must also give the homeowner a pre-lien notice as specified by section 1367.1. Subdivision (a) of section 1367.1 provides: "At least 30 days prior to recording a lien upon the separate interest of the owner of record to collect a debt that is past due . . . , the association shall notify the owner of record in writing by certified mail of the following: [¶] (1) A general description of the collection and lien enforcement procedures of the association . . . . [¶] (2) An itemized statement of the charges owed by the owner, including items on the statement which indicate the amount of any delinquent assessments . . . . [¶] (3) A statement that the owner shall not be liable to pay the charges, interest, and costs of collection, if it is determined the assessment was paid on

12

time to the association.  [¶]  (4) The right to request a meeting with the board as provided by paragraph (3) of subdivision (c) [meeting to discuss a payment plan].  [¶]  (5) The right to dispute the assessment debt by submitting a written request for dispute resolution to the association pursuant to the association's 'meet and confer' program . . . .  [¶] (6) The right to request alternative dispute resolution with a neutral third party . . . before the association may initiate foreclosure against the owner's separate interest, except that binding arbitration shall not be available if the association intends to initiate a judicial foreclosure."

### 3.  Notice After Recording the Assessment Lien

The lien (for the amount of the delinquent assessment, costs of collection, late charges, and interest) is recorded when the association causes a notice of delinquent assessment to be recorded with the county recorder in the county in which the owner's separate interest is located.  (§ 1367.1, subd. (d).)

The method and timing of the transmission of the notice of delinquent assessment to the homeowner is specified in section 1367.1, subdivision (d):  "A copy of the recorded notice of delinquent assessment shall be mailed by certified mail to every person whose name is shown as an owner of the separate interest in the association's records, and the notice shall be mailed no later than 10 calendar days after recordation."

### 4.  Pre-Foreclosure Notices

To collect a delinquent special assessment secured by a lien on the owner's property, an association may use judicial foreclosure, subject to several conditions. (§ 1367.4, subd. (c).)

First, an association must offer dispute resolution before initiating foreclosure. "Prior to initiating a foreclosure on an owner's separate interest, the association shall offer the owner and, if so requested by the owner, participate in dispute resolution pursuant to the association's 'meet and confer' program . . . or alternative dispute resolution . . . .  The decision to pursue dispute resolution or a particular type of

13

alternative dispute resolution shall be the choice of the owner . . . ." (§§ 1367.4, subd. (c)(1), 1367.1, subd. (c)(1)(B).)

Second, the board of directors of the association must vote to approve foreclosure. "The decision to initiate foreclosure of a lien for delinquent assessments that has been validly recorded shall be made only by the board of directors of the association . . . . The board shall approve the decision by a majority vote of the board members in an executive session. The board shall record the vote in the minutes of the next meeting of the board open to all members. The board shall maintain the confidentiality of the owner or owners of the separate interest by identify the matter in the minutes by the parcel number of the property, rather than the name of the owner or owners. . . ." (§ 1367.4, subd. (c)(2).)

Third, the board must provide notice of the Board's decision to initiate foreclosure to the homeowner in the manner specified by section 1367.4, subdivision (c)(3): "The board shall provide notice by personal service in accordance with the manner of service of summons . . . to an owner of a separate interest who occupies the separate interest or to the owner's legal representative, if the board votes to foreclose upon the separate interest. . . ."

### 5. Remedies for Failure to Comply

Section 1367.1 provides remedies for an association's failure to comply with the mandatory pre-lien and pre-foreclosure procedures and notice requirements set forth in sections 1367.1 and 1367.4.

Where the assessment lien has not yet been recorded: "An association that fails to comply with the procedures set forth in this section [§ 1367.1] shall, prior to recording a lien, recommence the required notice process." (§ 1367.1, subd. (l)(1).)

After the assessment lien has been recorded: "If it is determined that a lien previously recorded against the separate interest was recorded in error, the party who recorded the lien shall, within 21 calendar days, record or cause to be recorded in the office of the county recorder in which the notice of delinquent assessment is recorded a

14

lien release or notice of rescission and provide the owner of the separate interest with a declaration that the lien filing or recording was in error and a copy of the lien release or notice of rescission." (§ 1367.1, subd. (i).)

## C. *The Association's Failure to Comply with Statutory Notice Requirements*

### 1. The Parties' Contentions

In her writ petition, Diamond reiterates her contentions below that it is undisputed that the Association failed to comply with the Davis-Sterling Act's statutory notice requirements by (1) failing to send her a copy of the recorded notice of delinquent assessment by certified mail within 10 days of the recording (§ 1367.1, subd. (d)); (2) failing to give her a pre-foreclosure notice of her right to demand alternative dispute resolution (§§ 1367.1, subd. (c)(1)(B), 1367.4, subd. (c)(1)); (3) failing to record the Board's executive session vote to initiate foreclosure on her property in the minutes of the next meeting of the Board open to all members (§ 1367.4, subd. (c)(2)); and (4) failing to personally serve her with the notice of the Board's vote to foreclose prior to commencement of the foreclosure action (§ 1367.4, subd. (c)(3)).

Diamond further contends that the Legislature intended, in enacting sections 1367.1 and 1367.4, to protect homeowners from abuse of the foreclosure process by homeowners' associations. For that reason, she argues that strict compliance with the statutory notice requirements is necessary and the trial court erred in deeming substantial compliance to be sufficient for a valid assessment lien and enforcement of the lien in a judicial foreclosure action.

The Association responds that (1) although it failed to send Diamond a copy of the recorded notice of delinquent assessment with 10 days of the recording as required by section 1367.1, subdivision (d), it is anticipated that the evidence will show Diamond was out of the country during the 10-day period and therefore timely notice was not possible; (2) its pre-lien letter of June 19, 2007, advising Diamond of her right to request dispute resolution constituted pre-foreclosure notice of Diamond's right to demand alternative

15

dispute resolution as required by sections 1367.1, subdivision (c)(1)(B) and 1367.4, subdivision (c)(1); (3) its admitted failure to record the Board's executive session foreclosure vote in the minutes of the next Board meeting open to all members, as required by section 1367.4, subdivision (c)(2) "is of no consequence" because Diamond was aware that if she did not accept the Association's proposal for a payment plan, a foreclosure action would be filed; and (4) it did not violate section 1367.4, subdivision (c)(3) by personally serving Diamond with the notice of the Board's vote to foreclose at the same time it personally served her with the summons and complaint for the foreclosure action, since she "did not lose a single second of time in which to defend her interests."

In light of the Association's admission that it did not comply with all of the notice requirements of sections 1367.1 and 1367.4, the crucial issue in this case is whether, as the trial court ruled, substantial compliance is sufficient for the assessment lien on Diamond's property to be valid and enforceable in a judicial foreclosure action. To resolve the issue, we must construe the relevant provisions of sections 1367.1 and 1367.4 under the rules governing statutory interpretation.

### 2. Rules of Statutory Interpretation

Statutory interpretation involves purely legal questions to which we apply the independent standard of review. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562; accord *Jacobs Farm/Del Cabo, Inc. v. Western Farm Service, Inc.* (2010) 190 Cal.App.4th 1502, 1521.) In performing our independent review, we apply well-settled rules.

"[O]ur fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute. [Citation.] We begin with the language of the statute, giving the words their usual and ordinary meaning. [Citation.] The language must be construed 'in the context of the statute as a whole and the overall statutory scheme, and we give "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' [Citation.] In other words, ' "we do not construe statutes in

16

isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" ' [Citation.] If the statutory terms are ambiguous, we may examine extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we choose the construction that comports most closely with the Legislature's apparent intent, endeavoring to promote rather than defeat the statute's general purpose, and avoiding a construction that would lead to absurd consequences. [Citation.]" (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83.)

Additionally, we may " 'examine the history and background of the statutory provision in order to ascertain the most reasonable interpretation of the measure.' [Citation.]" (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 543 (*Doe*).) Even where the plain language of the statute dictates the result, the legislative history may provide additional authority confirming the court's interpretation of the statute. (*Id*. at p. 544.)

### 3. Analysis

Having reviewed the statutory provisions in question, for reasons that we will discuss we determine that the plain language of sections 1367.1 and 1367.4 and the legislative history show that the Legislature intended the notice requirements to be strictly construed. We will address in turn each of the four notice requirements that Diamond asserts the Association did not satisfy.

#### *Failure to Properly Transmit Notice of Recorded Assessment Lien*

Section 1367.1, subdivision (d) provides, "A copy of the recorded notice of delinquent assessment shall be mailed by certified mail to every person whose name is shown as an owner of the separate interest in the association's records, and the notice shall be mailed no later than 10 calendar days after recordation."

It is undisputed that the notice of delinquent assessment in this case was recorded on July 26, 2007, and the Association mailed Diamond a copy of the recorded notice of assessment to Diamond 28 days later as an enclosure in the August 22, 2007 letter. The

17

Association admits that it did not comply with section 1367.1, subdivision (d) because it did not send a copy of the recorded notice of delinquent assessment to Diamond either by certified mail or within 10 calendar days after the recordation.

The trial court ruled that the Association had substantially complied with the requirements of section 1367.1, subdivision (d) because Diamond received actual notice of the recorded assessment lien in sufficient time to allow her to resolve the assessment dispute with the Association before the foreclosure action was filed.

To determine whether substantial compliance is sufficient, we first examine the plain language of the statute. Section 1367.1, subdivision (d), states that the recorded notice of delinquent assessment "*shall* be mailed by certified mail," and that the notice "*shall* be mailed no later than 10 calendar days after recordation." (Italics added.) The California Supreme Court has stated the general rule regarding the interpretation of the word "shall": "[T]he word 'shall' in a statute is ordinarily deemed mandatory, and 'may' permissive. [Citation.]" (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1143 (*Peace Officers*).) The general rule therefore requires that section 1367.1, subdivision (d), be strictly construed to mandate that the homeowner receive a copy of the recorded notice of delinquent assessment by certified mail within 10 calendar days after the recordation, and that substantial compliance is insufficient.

"Nonetheless, in construing the statute, the court must ascertain the legislative intent. ' "In the absence of express language, the intent must be gathered from the terms of the statute construed as a whole, from the nature and character of the act to be done, and from the consequences which would follow the doing or failure to do the particular act at the required time. [Citation.] When the object is to subserve some public purpose, the provision may be held directory or mandatory as will best accomplish that purpose [citation]. . . ." [Fn. omitted.]' [Citation.]" (*Peace Officers*, *supra*, 10 Cal.4th at p. 1143.)

18

We find an expression of the Legislature's intent regarding the public purpose of the sections 1367.1 and 1367.4 and the statutory notice requirements in the legislative history.  Section 1367.1 was added to the Civil Code in 2002 (Stats. 2002, ch. 1111, § 8) and amended in 2005, when section 1367.4 was added (Stats. 2005, ch. 452, § 5).  In 2005, the Senate Judiciary Committee's bill analysis stated:  "This bill protects owners' equity in their homes when they fail to pay relatively small assessments to their common interest development associations."  (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 137 (2005-2006 Reg. Sess.) as amended Sept. 1, 2005, p. 1.)

The Assembly Committee on Judiciary similarly stated:  "This bill goes to the heart of home owner rights, touching upon the key issue of when, if ever, a homeowners' association should have the right to force the sale of a member's home when the home owner falls behind on paying overdue assessments or dues.  . . .  [¶]  . . .  [This bill] [s]eeks to protect a condominium owner's property and equity when he or she misses payment on relatively small assessments imposed by their common interest development (CID) association."  (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 137 (2005-2006 Reg. Sess.) as amended Apr. 5, 2005, pp. 1-2.)

Thus, the legislative history indicates that the public purpose of sections 1367.1 and 1367.4, including the notice requirements, was to protect the interest of a homeowner who has failed to timely pay an assessment levied by a homeowners' association.  The legislative history further indicates that to accomplish this purpose, the notice requirements were intended to be mandatory.

The Senate Judiciary Committee's bill analysis, prepared before section 1367.1 was enacted in 2002, states:  "This bill [Assem. Bill 2289] would make numerous changes to the procedures followed by homeowners' associations when a homeowner is delinquent on fees and assessments.  These changes would include a waiting period prior to the notice of recordation of a lien, a meeting by the association's board with the homeowner to discuss the matter upon the homeowner's request, and *additional*

19

*mandatory disclosures and notices* throughout the process." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2289 (2001-2002 Reg. Sess.) June 25, 2002, p. 1, italics added.) In 2005, when section 1367.1 was amended and section 1367.4 was added, the Senate Floor Analysis stated, "This bill also *requires* the owner to be *notified in specified ways* if the board has voted to foreclose." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 137 (2005-2006 Reg. Sess.) as amended April 5, 2005, p. 2, italics added.)

Since the legislative history shows that the Legislature's intent in enacting sections 1367.1 and 1367.4 was to protect the homeowner's interest by, among other things, requiring that a homeowners' association give mandatory notices to the homeowner before foreclosing on an assessment lien, it provides additional authority confirming our determination that the plain language of section 1367.1 and its notice requirements be strictly construed. (See *Doe, supra,* 42 Cal.4th at p. 544.) We have found no indication in the legislative history that the Legislature intended that substantial compliance with the statutory notice requirements would be sufficient to protect the homeowner's interest.

Also supporting our strict construction of section 1367.1, subdivision (d) is the inclusion in the statute of a penalty for failure to comply with the post-lien notice requirements. "[T]ime limits are generally directory, but when the statute provides a consequence or penalty for failure to act within the prescribed time, they have been construed as mandatory. [Citation.]" (*Peace Officers*, *supra,* 10 Cal.4th at p. 1143.)

Here, section 1367.1, subdivision (i) provides the penalty: "If it is determined that a lien previously recorded against the separate interest was recorded in error, the party who recorded the lien shall, within 21 calendar days, record or cause to be recorded in the office of the county recorder in which the notice of delinquent assessment is recorded a lien release or notice of rescission and provide the owner of the separate interest with a

20

declaration that the lien filing or recording was in error and a copy of the lien release or notice of rescission."

The legislative history further indicates the Legislature's intent that a lien "recorded in error" (§ 1367.1, subd. (i)) and therefore subject to release or rescission includes a lien recorded without strict compliance with the statutory notice requirements. Prior to the enactment of section 1367.1 in 2002, the Assembly bill analysis stated: "[I]f that lien were placed [*sic*] and any of the notification requirements of this bill were not met the association would have to rescind the lien, re-notify and wait 30 days to replace the lien." (Assem. Bill Analysis, Concurrence in Senate Amendments, Assem. Bill No. 2289 (2001-2002 Reg. Sess.), as amended Aug. 21, 2002, pp. 3-4.) We therefore determine that unless a homeowner's association strictly complies with the notice requirements of section 1367.1, the assessment lien is not valid, was recorded in error, and may not be enforced by judicial foreclosure. (§1367.4, subd. (c)(2) [foreclosure action may be initiated only where assessment lien was validly recorded].)

The trial court relied on section 4 in determining that substantial compliance with the statutory notice requirements is sufficient. Section 4 provides: "The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this code. The code establishes the law of this state respecting the subjects to which it relates, and its provisions are to be liberally construed with a view to effect its objects and to promote justice." However, the California Supreme Court has instructed that " '[e]ven as to the [Civil] code, "liberal construction" does not mean enlargement or restriction of a plain provision of a written law. If a provision of the code is plan and unambiguous, it is the duty of the court to enforce it as it is written.' " (*Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804, 815.)

The trial court also relied on the decision in *Kim v. JF Enterprises* (1996) 42 Cal.App.4th 849 (*Kim*), which concerned mechanic's liens, as support for the liberal construction of the sections 1367.1 and 1367.4 statutory notice requirements. In *Kim*, the

21

issue was whether the plaintiffs' failure to serve and file a preliminary 20-day notice, as required by former section 3097, prevented them from foreclosing on their mechanics' liens. (*Kim*, *supra*, 42 Cal.App.4th at pp. 854-855.) The court stated that "[s]trict compliance with [former] section 3097 is required." (*Id.* at p. 855.) Rejecting the plaintiffs' contention that they were not required to give a preliminary notice under the former section 3097, subdivision (a) exception for a claimant " 'under direct contract with the owner,' " the court ruled that this exception only applies where the owner has actual knowledge of the construction. (*Kim*, *supra*, at pp. 855, 859.)

Since the decision in *Kim* concerned the express statutory exception set forth in former section 3097, subdivision (a) to the preliminary notice requirement for a valid mechanic's lien, and there is no analogous statutory exception to the section 1367.1 notice requirements, *Kim* is inapplicable here. We also observe that in the mechanic's lien context it has been held that "where the Legislature has provided a detailed and specific mandate as to the manner or form of serving notice upon an affected party that its property interests are at stake, any deviation from the statutory mandate will be viewed with extreme disfavor." (*Harold L. James, Inc. v. Five Points Ranch, Inc.* (1984) 158 Cal.App.3d 1, 6; see also *Casa Eva I Homeowners Assn. v. Ani Construction & Tile, Inc.* (2005) 134 Cal.App.4th 771, 780 [judgment lien statutes are strictly construed]; *Bank of America v. Salinas Nissan, Inc.* (1989) 207 Cal.App.3d 260, 270 [statutes governing attachment of property are strictly construed] ; *San Joaquin Blocklite, Inc. v. Willden* (1986) 184 Cal.App.3d 361, 365-366 [former section 3098's preliminary notice requirement for recovery under a stop notice strictly construed].) These decisions are consistent with the California Supreme Court's long-ago ruling that " 'a lien which is the creature of statute can be enforced only in the manner prescribed by the statute.' [Citation.]" (*Chase v. Putnam* (1897) 117 Cal. 364, 367-368.)

We therefore determine that the notice requirements of sections 1367.1 and 1367.4 are mandatory. Pursuant to section 1367.1, subdivision (d), the Association was required

to send Diamond a copy of the recorded notice of delinquent assessment by certified mail no later than 10 calendar days after the recordation. Since the Association admittedly failed to satisfy this notice requirement, the assessment lien recorded on Diamond's property is not valid and may not be enforced in a judicial foreclosure action. (§1367.4, subd. (c)(2).)

### *Failure to Give Notice of the Pre-Foreclosure Right to Demand Alternative Dispute Resolution*

Diamond contends that the Association failed to give her the pre-foreclosure notice of her right to demand alternative dispute resolution that is mandated by the statutory scheme for foreclosure on an assessment lien. The Association contends that its pre-lien letter of June 19, 2007, was sufficient to comply with the statutory requirements for notification of the right to alternative dispute resolution.

Section 1367.1, subdivision (a) expressly requires an association to give the homeowner the written notice specified in the statute at least 30 days before recording an assessment lien on a homeowner's separate interest. The dispute resolution notice requirements are set forth in subdivisions (a)(5) and (a)(6) of section 1367.1.

Subdivision (a)(5) of section 1367.1 requires the notice to notify the owner of the following: "The right to dispute the assessment debt by submitting a written request for dispute resolution to the association pursuant to the association's 'meet and confer' program required in Article 5 (commencing with Section 1363.810) of Chapter 4."

Subdivision (a)(6) of section 1367.1 requires the notice to also notify the owner of the following regarding alternative dispute resolution: "The right to request alternative dispute resolution with a neutral third party pursuant to Article 2 (commencing with Section 1369.510) of Chapter 7 before the association may initiate foreclosure against the owner's separate interest . . . ."

The notice requirements set forth in subdivisions (a)(5) and (a)(6) of section 1367.1 are not stated in the disjunctive; the word "or" does not appear.

23

Section 1367.1, subdivision (a) expressly requires that the homeowner be notified "of the following," without indicating that any of the notice requirements are in the alternative or otherwise optional. Consequently, to satisfy the notice requirement of section 1367.1, subdivision (a), the pre-lien notice to the homeowner must include (1) notice of the right to meet and confer as provided by subdivision (a)(5); *and* (2) notice of the right to alternative dispute resolution with a neutral third party as provided by subdivision (a)(6).

We find that the June 19, 2007 pre-lien letter did not comply with the section 1367.1, subdivisions (a)(5) and (a)(6) notice requirements. The June 19, 2007 letter states in pertinent part: "You have the right to dispute the assessment debt by submitting a written request for dispute resolution to the Homeowners' Association pursuant to the Homeowner's Association's 'meet and confer' program, *or as an alternative*, you have the right to request alternative dispute resolution with a neutral third party as set forth in the Civil Code beginning with . . . [s]ection 1369.510." (Italics added.) Thus, the June 19, 2007 letter incorrectly notified Diamond that her right to dispute resolution consisted of (1) meet and confer to dispute the assessment debt pursuant to the Association's meet and confer program; *or* (2) alternative dispute resolution with a neutral third party.

Since the June 19, 2007 letter did not satisfy the statutory pre-lien notice requirements of section 1367.1, subdivision (a), we determine for this additional reason that the assessment lien is not valid and may not be enforced in a judicial foreclosure action. (§1367.4, subd. (c)(2).)

### *Failure to Properly Record the Board's Executive Session Vote to Initiate Foreclosure*

Section 1367.4, subdivision (c)(2) provides: "The decision to initiate foreclosure of a lien for delinquent assessments that has been validly recorded shall be made only by the board of directors of the association and may not be delegated to an agent of the

24

association.  The board shall approve the decision by a majority vote of the board members in an executive session.  *The board shall record the vote in the minutes of the next meeting of the board open to all members*.  The board shall maintain the confidentiality of the owner or owners of the separate interest by identifying the matter in the minutes by the parcel number of the property, rather than the name of the owner or owners.  A board vote to approve foreclosure of a lien shall take place at least 30 days prior to any public sale."  (Italics added.)

The Association admits that it failed to record the Board's executive session foreclosure vote in the minutes of the next Board meeting open to all members, as required by section 1367.4, subdivision (c)(2).  However, the Association contends that its failure "is of no consequence"  because Diamond was aware that a foreclosure action would be filed if she did not accept the Association's proposal for a payment plan.

The Association provides no authority for the proposition that it may disregard the notice requirement of section 1367.4, subdivision (c)(2) where the homeowner has actual knowledge that foreclosure is a possibility.  To the contrary, as we have determined, the plain language of section 1367.4 and its legislative history shows that the statute's notice requirements are mandatory.  We reiterate that prior to the enactment of section 1367.4 in 2005, the Senate Floor Analysis stated, "This bill also *requires* the owner to be *notified in specified ways* if the board has voted to foreclose."  (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 137, *supra*, at p. 2, italics added.)

Since the Association did not comply with the notice requirement of section 1367.4, subdivision (c)(2), for that additional reason the assessment lien on Diamond's property is not valid and may not be enforced in a judicial foreclosure action.

### *Failure to Properly Serve Notice of the Board's Foreclosure Vote*

Diamond contends that the Association failed to personally serve her with the notice of the Board's vote to foreclose prior to commencement of the foreclosure action (§ 1367.4, subd. (c)(3)).  The Association responds that it complied by personally serving

Diamond with the notice of the Board's vote to foreclose at the same time it personally served her with the summons and complaint for the foreclosure action, since she "did not lose a single second of time in which to defend her interests."

Section 1367.4, subdivision (c)(3) provides in part: "An association that seeks to collect delinquent regular or special assessments . . . may use judicial or nonjudicial foreclosure subject to the following conditions: [¶] . . . [¶] The board shall provide notice by personal service in accordance with the manner of service of summons in Article 3 (commencing with Section 415.10)[4] of Chapter 4 of Title 5 of Part 2 of the Code of Civil Procedure to an owner of a separate interest who occupies the separate interest . . . if the board votes to foreclose upon the separate interest."

According to Diamond, the notice requirement of section 1367.4, subdivision (c)(4) is a condition precedent to filing a judicial foreclosure action, and since the Association personally served the notice on her after it filed the instant judicial foreclosure action, it failed to comply with section 1367.4, subdivision (c)(4). Diamond relies upon the definition of "condition precedent" set forth in section 1436: "A condition precedent is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed."

We agree that personal service on the homeowner of the board's vote to foreclose on the homeowner's separate interest is a statutory condition precedent to the filing of an action for judicial foreclosure on an assessment lien. Section 1367.4, subdivision (c)(4) expressly provides that an association may use judicial foreclosure "subject to the following conditions," which include "personal service in accordance with the manner of

---

 **4** Code of Civil Procedure section 415.10 provides: "A summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served. Service of a summons in this manner is deemed complete at the time of such delivery. [¶] The date upon which personal delivery is made shall be entered on or affixed to the face of the copy of the summons at the time of its delivery. However, service of a summons without such date shall be valid and effective."

service of summons . . . to an owner of a separate interest who occupies the separate interest . . . if the board votes to foreclose upon the separate interest." Thus, the plain language of section 1367.4, subdivision (c)(4), which we must strictly construe, requires an association to satisfy certain conditions before filing a judicial foreclosure action, including personal service of the notice of the board's vote to foreclose. (See, e.g., *Center for Self-Improvement & Community Development v. Lennar Corp.* (2009) 173 Cal.App.4th 1543, 1551 [statutory notice is a mandatory condition precedent to establishing a citizen's right to commence a Proposition 65 enforcement action in the public interest].)

In the present case, the Association filed the instant judicial foreclosure action on November 15, 2007. It personally served notice of the Board's November 7, 2007 vote to foreclose on the assessment lien on Diamond's property nearly one month later, on December 9, 2007. Since it is undisputed that the Association did not personally serve the notice required by section 1367.4, subdivision (c)(4) before filing the judicial foreclosure action, the lack of compliance with this statutory condition precedent is fatal to the judicial foreclosure action. (See, e.g., *In re Franklin* (2008) 169 Cal.App.4th 386, 392 [absence of the statutory condition precedent to lawful sexually violent predator civil commitment proceeding is a fatal flaw].)

### 4. Conclusion

In summary, we have determined that the notice requirements set forth in the Davis-Sterling Act at sections 1367.1 and 1367.4 for judicial foreclosure on an assessment lien must be strictly construed, pursuant to the plain language of the statutes and their legislative history. We have also determined on the undisputed facts that the Association failed to comply with the Davis-Sterling Act's statutory notice requirements by (1) failing to send Diamond a copy of the recorded notice of delinquent assessment by certified mail within 10 days of the recording (§ 1367.1, subd. (d)); (2) failing to give her the required pre-lien notice of her right to demand alternative dispute resolution

27

(§ 1367.1, subds. (a)(5), (a)(6)); (3) failing to record the Board's executive session vote to initiate foreclosure on her property in the minutes of the next meeting of the Board open to all members (§ 1367.4, subd. (c)(2)); and (4) failing to personally serve her with the notice of the Board's vote to foreclose prior to commencement of the foreclosure action (§ 1367.4, subd. (c)(3)).

Since the Association failed to strictly comply with all of the mandatory notice requirements, the assessment lien that the Association recorded on Diamond's property is not valid and may not be enforced in a judicial foreclosure action. (§1367.4, subd. (c)(2).) The instant judicial foreclosure action therefore lacks merit as a matter of law and Diamond's motion for summary judgment should be granted.

To prevent a trial on non-actionable claims, we will grant Diamond's petition for a writ of mandate and direct the trial court to vacate its order denying Diamond's motion for summary judgment and to enter a new order granting the motion. (See *Prudential*, *supra*, 98 Cal.App.4th at p. 594.) Our ruling is without prejudice to further proceedings in the trial court with respect to the assessment lien.

## V. DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate the order denying petitioner Arlyne M. Diamond's motion for summary judgment and to enter a new order granting the motion. Upon finality of this decision, the temporary stay order is vacated. Costs in this original proceeding are awarded to petitioner.

28

_____
BAMATTRE-MANOUKIAN, J.


WE CONCUR:




_____
PREMO, ACTING P.J.




_____
GROVER, J.

Filed 7/12/13

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| ARLYNE M. DIAMOND,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF<br>SANTA CLARA COUNTY,<br><br>    Respondent;<br><br>CASA DEL VALLE HOMEOWNERS<br>ASSOCIATION,<br><br>    Real Party in Interest. | H038734<br>(Santa Clara County<br>Super. Ct. No. CV099053)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING,<br>CERTIFYING OPINION FOR<br>PUBLICATION<br>[NO CHANGE IN JUDGMENT] |


THE COURT:

It is ordered that the opinion filed herein on June 18, 2013, be modified as follows:

1.  On page 9, change "the American Association of Retired Persons (AARP)" to "AARP" so that the sentence beginning on page 8, second full paragraph, line seven, and continuing to the first line of page 9 reads:

Having received further briefing from the parties and granted the application of the AARP for leave to file an amicus curiae brief in support of petitioner, and having provided an opportunity for oral argument, we turn to the merits of the writ petition, beginning with our standard of review.

2.  On page 9, second full paragraph, first line, delete the sentence beginning "The standard of review . . . ." and replace it with the following sentence:

The standard of review for an order granting or denying a motion for summary judgment is de novo.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*).)

3.  On page 21, in line eight of the second full paragraph, the word "plan" is changed to "plain" so that the sentence reads:

If a provision of the code is plain and unambiguous, it is the duty of the court to enforce it as it is written.  (*Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804, 815.

There is no change in the judgment.

Real Party in Interest's petition for rehearing is denied.

The opinion in the above-entitled matter filed on June 18, 2013, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____
BAMATTRE-MANOUKIAN, J.


_____
PREMO, ACTING P.J.


_____
GROVER, J.

31

| Trial Court: | Santa Clara County Superior Court |
| | Superior Court No.: CV099053 |

Trial Court:                                 Santa Clara County Superior Court
Superior Court No.:  CV099053


Trial Judge:                                 Hon. Mark H. Pierce


Attorney for Petitioner:              Law Offices of Louis Spitters
Arlyne M. Diamond                   Laurence Louis Spitters


Attorneys for Real Parties in Interest:   Edward F. Cullen
Casa Del Valle Homeowners
Association                            Law Offices of Charles L. Morrone
                                      Charles L. Morrone


Amicus Curiae on behalf of Petitioner:  Barbara A. Jones
AARP


*Diamond v. Superior Court*
H038734