FILED

AUG 26 2019

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-18-1248-LSTa |
| | BAP No. CC-18-1242-LSTa |
| MARIA A. BASAVE DE GUILLEN, | (consolidated appeals) |
| | |
| Debtor. | Bk. No. 8:18-bk-10693-CB |
| | |
| HIGHLAND GREENS HOMEOWNERS ASSOCIATION OF BUENA PARK, | |
| | |
| Appellant, | |
| | |
| v. | **OPINION** |
| | |
| MARIA A. BASAVE DE GUILLEN, | |
| | |
| Appellee. | |

Argued and Submitted on May 23, 2019
at Pasadena, California

Filed – August 26, 2019

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Catherine E. Bauer, Bankruptcy Judge, Presiding

Appearances:     Erin A. Maloney of Fiore, Racobs & Powers argued for Appellant; Charity Manee argued for Appellee.

Before: LAFFERTY, SPRAKER, and TAYLOR, Bankruptcy Judges.

LAFFERTY, Bankruptcy Judge:

## INTRODUCTION

Highland Greens Homeowners Association ("Highland Greens") appeals the bankruptcy court's order sustaining in part Debtor Maria Basave de Guillen's objection to Highland Greens' proof of claim. The bankruptcy court found that, under California law, Highland Greens' recorded notice of lien for delinquent homeowners assessments on Debtor's condominium did not secure amounts accruing after the recordation of the lien. Accordingly, the bankruptcy court limited Highland Greens' secured claim to the amount of its recorded pre-petition state court judgment, classifying the remainder of the claim as unsecured.

We AFFIRM.

## FACTUAL BACKGROUND

Pre-petition, Debtor fell behind on the homeowners association ("HOA") dues on her condominium in Buena Park, California (the "Property"). As a consequence, Highland Greens recorded a Notice of

2

Delinquent Assessment Lien (the "Notice") against the Property on December 1, 2008.[1] Highland Greens recorded an amendment to the Notice in April 2011 (the "2011 Amendment"). Both the Notice and the 2011 Amendment purported to include, in the amount subject to the lien, unpaid assessments and charges accruing after the date of the notice.

In August 2011, Highland Greens sued Debtor in state court to enforce its lien and, in April 2012, obtained a default judgment for foreclosure and a money judgment of $21,398.02 (consisting of $10,140 principal, attorney's fees of $10,273.12, and collection costs of $2,885, minus a $1,900.10 payment). The money judgment was subsequently recorded, and Highland Greens began the foreclosure process, but no sale was ever conducted.

Debtor filed a chapter 13[2] case on February 28, 2018.[3] On Schedule D, she listed two debts to Highland Greens secured by the Property, one for $8,000, described as "interest on claim," and another for $40,000, described as "assessments and attorney's fees." Her proposed plan provided for

---

[1]Under California law, the recordation of such a notice, if it complies with certain statutory requirements, creates a lien against the owner's interest in the subject property. Cal. Civ. Code § 5675.

[2]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[3]Debtor had filed a previous chapter 13 petition in July 2017. That case was dismissed pre-confirmation on February 16, 2018.

payment of both claims in full, with interest at ten percent on the $40,000 claim.

Highland Greens then filed a proof of claim for $64,137.20, purportedly secured by the Property, with interest at twelve percent. The itemization attached to the proof of claim indicated that it consisted of: (1) the April 2012 money judgment of $21,398.02; (2) $8,572.63 in interest on the judgment; (3) post-judgment assessments through February 1, 2018 of $14,060; (4) late charges of $690; (5) post-judgment interest of $7,207.44; (6) post-judgment attorney's fees and costs of $13,729.11; less (7) a payment credit of $1,520. The attachment to the proof of claim explained that the post-judgment assessments were secured by the Property pursuant to the Declaration of Covenants, Conditions and Restrictions ("CC&Rs") recorded in 1964 against the Property. Highland Greens also asserted that it was entitled to twelve percent interest on any delinquent amounts pursuant to California Civil Code § 5650(b)(3).

Highland Greens attached eight pages of the CC&Rs to its proof of claim. The relevant provision (paragraph 12(b)) provides, among other things, that if a delinquency in assessments is not paid within ten days after delivery of a notice of default, the Board of Governors may file a claim of lien; the provision then lists the information that must be included in such claim of lien. The paragraph continues, "[u]pon recordation of a duly executed original or duly executed copy of such claim of lien by the

4

Recorder of the County of Orange the lien claimed therein shall immediately attach and become effective, subject only to the limitations hereinafter set forth. Each default shall constitute a separate basis for a claim of lien or a lien."

Debtor filed an objection to Highland Greens' claim. She argued: (1) the claim should be disallowed in its entirety for lack of supporting documentation; (2) most of the claim should be reclassified as unsecured because Highland Greens did not comply with the procedures set forth in the Davis-Stirling Common Interest Development Act ("Davis-Stirling Act" or the "Act"), specifically, California Civil Code §§ 5660 and 5676, and there was no basis to find an equitable lien; (3) only the portion of the debt representing the amount owing under the judgment may be classified as secured; (4) the attorney's fee portion of the claim should be disallowed as unreasonable and unsupported; and (5) the claim should not include future assessments because Debtor was current postpetition on those obligations.

Highland Greens filed an opposition in which it asserted: (1) the Notice recorded in 2008 complied with all procedural requirements and in any event had been adjudicated valid by the state court in the foreclosure lawsuit; (2) Debtor was barred by issue preclusion from challenging the validity of the lien; (3) Highland Greens was entitled under California Civil Code § 5650(b)(3) to twelve percent interest on the post-judgment assessments and related fees and costs; (4) Highland Greens was entitled to

5

submit cost bills for its judgment enforcement activities, which increased the judgment amount; and (5) the assessment lien was a "continuing lien"; thus, assessments that became delinquent after the recordation of the lien were appropriately included in the amount secured by the lien, citing *Bear Creek Master Ass'n v. Edwards*, 130 Cal. App. 4th 1470, 1489 (2005).

Debtor filed a reply in which she argued that the Davis-Stirling Act prohibited Highland Greens from asserting a continuing lien. She contended that *Bear Creek* was not binding on the bankruptcy court and that federal courts in California had held to the contrary, citing *In re Warren*, No. 15-CV-03655-YGR, 2016 WL 1460844 (N.D. Cal. Apr. 13, 2016), and *In re Guajardo*, No. 15-31452 DM, 2016 WL 943613 (Bankr. N.D. Cal. Mar. 11, 2016).

At the initial hearing on Debtor's objection, counsel for Highland Greens stated that the HOA was relying on the assessment lien rather than the judgment lien as the basis for its security interest. The bankruptcy court requested further detail as to how the different components of the claim amount were calculated and continued the matter for further briefing, which the parties submitted.

At the final hearing on the claim objection, the bankruptcy court did not rule on the reasonableness of the attorney's fees or any of the other arguments raised by Debtor. But it ruled that under applicable law there was no continuing lien based on the Notice. As such, the only basis for

Highland Greens' security interest was its judgment lien.[4] Accordingly, the court sustained Debtor's objection in part, allowing Highland Greens' claim in full but reclassifying it as $29,970.65 secured (principal of $21,398.02 plus pre-petition interest of $8,572.63) and the $34,166.55 balance as unsecured. Shortly thereafter, the court entered its order on the Debtor's claim objection, and Highland Greens timely appealed.[5]

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err in sustaining in part Debtor's objection to Highland Greens' claim?

## STANDARD OF REVIEW

This appeal involves issues of statutory and contract interpretation, which we review de novo. *See Veal v. Am. Home Mortg. Serv., Inc. (In re Veal)*, 450 B.R. 897, 918 (9th Cir. BAP 2011) (citations omitted) (an order sustaining or overruling a claim objection "can raise legal issues (such as

---

[4]Under California law, the assessment lien merged into the judgment. *Diamond Heights Village Ass'n, Inc. v. Financial Freedom Senior Funding Corp.*, 196 Cal. App. 4th 290, 301-02 (2011).

[5]Highland Greens filed its notice of appeal on September 4, 2018. It filed an amended notice of appeal six days later. Two appeal numbers were assigned due to administrative error. The appeals were thus consolidated, with all papers to be filed under BAP No. CC-18-1248.

the proper construction of statutes and rules) which we review de novo
. . . ."); *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1064 (9th Cir. 2002)
("Under California law, the interpretation of a contract is a question of law
which the court reviews de novo.").

## DISCUSSION

This appeal requires us to determine whether, under California law,
Highland Greens' assessment lien was a continuing lien on the Property
such that it secured amounts that became delinquent after Highland
Greens recorded its Notice. This is a question of first impression for this
Panel, and it presents some challenges. First, the statute in question does
not expressly address the issue of an HOA's right to a continuing lien.
Second, the statute references the governing documents (the CC&Rs),
which may or may not create a contractual basis for a continuing lien.
Third, California Courts of Appeal have differed significantly in their
assessment of the policy to be enhanced by the Davis-Stirling Act, i.e., is the
purpose of the Act to facilitate the expeditious collection of HOA
assessments or to safeguard the notice rights of homeowners?

These variables and complexities notwithstanding, we do not write
on a blank judicial slate: as discussed below, two federal courts have
opined that the Davis-Stirling Act does not provide for the continuing lien
that Highland Greens seeks. Highland Greens relies principally on *Bear
Creek*, an older California Court of Appeal decision to the contrary. But that

8

decision, as discussed below, did not address the matter of continuing liens as the primary issue on appeal nor did it consider the Act's notice provisions. The court of appeal instead focused on what it plausibly believed to be the policy underlying the Act–to facilitate HOAs' collection of delinquent assessments. But its view is not supported by the legislative history or other California cases. The decision's rationale was, at least indirectly, called into question by a more recent California Court of Appeal decision, *Diamond v. Superior Court*, 217 Cal. App. 4th 1172, *as modified on denial of reh'g* (July 12, 2013), confirming that the most fundamental and important purpose of the statute is to protect homeowners (not associations), and that the statutory requirements for precision in the notice of lien provided to homeowners must override any goals of expedition or convenience to associations.

As discussed below, we conclude that there are two independent bases on which to affirm the bankruptcy court's order sustaining Debtor's objection in part. First, the language of the Notice and 2011 Amendment conflicts with the applicable CC&Rs, which do not authorize a continuing lien. Second, the Davis-Stirling Act does not authorize a continuing lien. In reaching this latter conclusion, we agree with the reasoning of the other federal courts to consider this issue that a continuing lien is inconsistent with the Act's notice provisions and the expressed legislative purpose of the Act.

## A.      The Davis-Stirling Act

We begin, as we must, with the language of the relevant statutes. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989); *Lee v. Hanley*, 61 Cal. 4th 1225, 1232-33 (2015). The Davis-Stirling Act, enacted in 1985, authorizes condominium homeowners associations to levy assessments. Subject to certain limitations, a homeowners association "shall levy regular and special assessments sufficient to perform its obligations under the governing documents and this act." Cal. Civ. Code § 5600.[6] The Act also sets forth procedures for collecting delinquent assessments:

> (a) A regular or special assessment and any late charges, reasonable fees and costs of collection, reasonable attorney's fees, if any, and interest, if any, as determined in accordance with subdivision (b), shall be a debt of the owner of the separate interest at the time the assessment or other sums are levied.

> (b) Regular and special assessments levied pursuant to the governing documents are delinquent 15 days after they become due, unless the declaration provides a longer time period, in which case the longer time period shall apply.

Cal. Civ. Code § 5650. In addition, it authorizes HOAs to recover reasonable collection costs, including attorney's fees, late charges, and interest not to exceed twelve percent. *Id.* at § 5650(b)(1)-(3).

---

[6]The Davis-Stirling Act was renumbered in 2014. It is currently codified at sections 4000-6150 of the California Civil Code; it was formerly found at sections 1350-1378.

California Civil Code § 5675 provides for the placing of a lien on the owner's interest in the condominium to secure delinquent assessments:

> (a) The amount of the assessment, plus any costs of collection, late charges, and interest assessed in accordance with subdivision (b) of Section 5650, shall be a lien on the owner's separate interest in the common interest development from and after the time the association causes to be recorded with the county recorder of the county in which the separate interest is located, a notice of delinquent assessment, which shall state the amount of the assessment and other sums imposed in accordance with subdivision (b) of Section 5650, a legal description of the owner's separate interest in the common interest development against which the assessment and other sums are levied, and the name of the record owner of the separate interest in the common interest development against which the lien is imposed.

Cal. Civ. Code § 5675. This section further requires that the notice of delinquent assessment must be signed by a designated person and include an itemized statement of charges; it also requires a copy of the notice to be mailed by certified mail to the record owner(s). Cal. Civ. Code § 5675(b)-(e). These notice requirements are to be strictly construed. *Diamond*, 217 Cal. App. 4th at 1189.

In applying these statutes, we are guided by (1) the plain language of the Davis-Stirling Act as interpreted by California federal and state courts; (2) the public policy behind the Act; and (3) principles of statutory construction. And, given that the Act references the "governing

11

documents," we also consider the terms of the applicable CC&Rs.

**B.     California Federal Cases Interpreting the Davis-Stirling Act**

The Davis-Stirling Act itself does not provide for a continuing lien, and case law is scant regarding whether the Act may be fairly interpreted as so providing.   Two federal courts in the Northern District of California have held that adding future assessments to a recorded lien securing delinquent assessments without recording a new lien is impermissible under the Davis-Stirling Act. *In re Warren*, 2016 WL 1460844; *In re Guajardo*, 2016 WL 943613.

In *Guajardo*, the bankruptcy court was tasked with determining the priorities between an HOA's assessment lien and a federal tax lien for purposes of distributing the proceeds of a sale of property of the estate. The notice of delinquent assessment at issue in that case provided, "Additional monies shall accrue under this claim at the rate of the claimant's regular monthly or special assessments, plus permissible late charges, costs of collection and interest, accruing subsequent to the date of this notice." 2016 WL 943613, at *1. The court held that this language was ineffective under both California contract law and the Davis-Stirling Act, for two reasons.

First, the CC&Rs at issue in that case provided that each "lienable default shall constitute a separate basis for a lien." *Id*. at *3. The court found that the language of the notice that provided for the lien to include subsequent assessments and related charges was inconsistent with this

provision. *Id.* at *3.[7]

Second, and importantly, the court interpreted the language of California Civil Code § 5675 as limiting an assessment lien to the amount stated in the notice of delinquent assessment. Specifically, the statute provides that the amount of the assessment (plus costs, late charges, and interest) shall be a lien on the owner's separate interest. The statute further requires that the notice state the amount of the delinquent assessment and other sums. As such, the court found that adding future assessments to an existing lien would be "inconsistent with the portions of the Davis-Stirling Act requiring the unpaid amounts to be specifically set forth in the notice and in an attached accounting." *Id.* at *3.

The bankruptcy court distinguished *Bear Creek*. As discussed below, in that case, the California Court of Appeal held that homeowners assessments that became due after the recordation of a lien notice were properly included in a judgment for lien foreclosure and breach of contract, based on the applicable CC&Rs and the provisions of the Davis-Stirling Act that, in turn, referenced the HOA's governing documents. The *Guajardo* court noted that the CC&Rs in *Bear Creek* were much more specific as to future accruals than those at issue in the case before it, but the court also held that "the general imposition of a 'present' lien at the time of and by

_____

[7]The CC&Rs, Notice, and 2011 Amendment contain language that is substantially similar to the documents at issue in *Guajardo*.

13

operation of the CCRs with respect to all future and potentially unknown assessments does not satisfy the notice and lien provisions of the Civil Code." *Id.*

In *Warren*, the district court affirmed the bankruptcy court's order sustaining a debtor's objection to the secured claim of an HOA on grounds that the HOA's lien was limited to the amounts stated in its notice of lien assessment. 2016 WL 1460844 at *1. As in *Guajardo*, the lien notice in that case contained language that purported to constitute a prospective charge for future assessments and related costs. And like the bankruptcy court in *Guajardo*, the district court held that this language was impermissible under the Davis-Stirling Act. The court noted that the procedural notice requirements of the Davis-Stirling Act are to be strictly construed, citing *Diamond*, 217 Cal. App. 4th at 1191, and found that "[t]he Davis-Stirling Act limits the lien to the amount specified in the notice . . . ." *Id.* at *3-*4. The court went on: "Claimant should have filed additional liens to secure its interest in future unpaid assessments. To hold otherwise would offend the comprehensive notice scheme and homeowners' rights to contest delinquent assessments as established in the Davis-Stirling Act." *Id.* at *4.

C.    **California State Cases Interpreting the Davis-Stirling Act**

In *Bear Creek*, the California Fourth District Court of Appeal affirmed a judgment for lien foreclosure and breach of contract based on a condominium owner's failure to pay assessments. 130 Cal. App. 4th at

1472. The primary issue before the court of appeal was whether an HOA may charge an owner assessments for lots on which condominium units were planned but had not yet been built. *Id.* In affirming the trial court's foreclosure judgment, the court of appeal held that the definition of "condominium" in the Davis-Stirling Act included unbuilt lots in a qualifying condominium plan. *Id.* at 1481-82. The court of appeal also affirmed the trial court's finding that the HOA had properly served lien notices on the owner. *Id.* at 1488. Finally, the court of appeal considered the appellant's argument that the trial court had improperly determined the amount of the lien assessments because it included amounts that came due after the recordation of the lien notice; it found that those amounts were properly included. *Id.* at 1489.

The court of appeal rejected the owner's argument that no "recurring liens" were authorized under the relevant statutes such that the amount of the assessments secured by the lien was limited to the amount initially stated in the lien notice. The court noted that former California Civil Code § 1367 (recodified at § 5675), in describing the amounts to be secured by the lien, referenced former California Civil Code § 1366 (recodified at § 5600), which in turn referenced the homeowners association's "governing documents." *Id.* at 1488.

Specifically, California Civil Code § 1367(b) provided: "[t]he amount of the assessment, plus any costs of collection, late charges, and interest

assessed in accordance with Section 1366, shall be a lien on the owner's interest in the common interest development from and after the time the association causes to be recorded with the county recorder of the county in which the separate interest is located, a notice of delinquent assessment. . . ." *Id.* at 1488. The cross-referenced statute, former California Civil Code § 1366, provided, in relevant part: "the association shall levy regular and special assessments sufficient to perform its obligations under the governing documents and this title."[8]

The court next looked to the governing documents, specifically, the CC&R's. The CC&Rs provided that "any demand or claim of lien or lien on account of prior delinquencies shall be deemed to include subsequent delinquencies and amounts due on account thereof." *Id.* Further, the recorded lien notices provided that "[a]dditional monies shall accrue under this claim at the rate of the claimants' regular monthly or special assessments, plus permissible late charges, costs of collection and interest, accruing subsequent to the date of this notice." *Id.* Based on this language, the court of appeal held that "all of the sums included on the liens and lien notices are authorized by the CC & R's and statutory law. The amounts here determined by the court to be owing as liens are no more than the amounts authorized by the governing documents and statutes." *Id.*

---

[8]That section was recodified at California Civil Code § 5600(a) and contains substantively identical language.

16

The court of appeal opined that its holding was consistent with the legislative purpose of providing homeowners associations a quick and efficient means of seeking relief against a nonpaying owner:

> Were the relevant provisions to be construed as [the owner] suggests, the described statutory purpose of providing for a quick and efficient means of enforcing the CC & R's would be seriously undermined; each month, or at such other intervals as the assessments are charged under a given set of CC & R's, the association would be required to record successive liens. A successive recordation requirement would impose a heavy— and needless—burden upon homeowners' associations, fraught with risk to the association, and undue windfall to the delinquent homeowner, should any installment be overlooked. We are unwilling to construe Civil Code section 1367 to require such an oppressive burden. Both delinquent homeowners and the public at large are placed on notice, with the recordation of the initial assessment lien, that subsequent regularly and specially levied assessments, if they continue unpaid, will accrue in due course. The purpose of the lien notice and recordation will have been served, and the association's remedy justly preserved, by the initial recordation of lien.

*Id.* at 1489.

Two years after the decision in *Bear Creek*, the California Sixth District Court of Appeal held that the notice provisions of the Davis-Stirling Act are to be strictly construed. *Diamond*, 217 Cal. App. 4th at 1189. The issue in *Diamond* was whether "substantial compliance" with the pre-lien and pre-foreclosure notice requirements of the Davis-Stirling Act was sufficient to permit an HOA to proceed with foreclosure. The court of appeal held that

17

it was not. In its opinion, the court of appeal examined the legislative history of the Act and concluded that it was intended to "protect the interest of a homeowner who has failed to timely pay an assessment levied by a homeowners association." *Id.* at 1190-91. As such, the notice requirements were intended to be mandatory. *Id.*

The court of appeal noted that its conclusion was supported by California Supreme Court precedent, including *Li v. Yellow Cab Co.*, 13 Cal. 3d 804, 815 (1975) ("If a provision of the [Civil] [C]ode is plain and unambiguous, it is the duty of the court to enforce it as it is written."); *Chase v. Putnam*, 117 Cal. 364, 367–368 (1897) ("a lien which is the creature of statute can be enforced only in the manner prescribed by the statute."). *Diamond*, 217 Cal. App. 4th at 1192-93.

**D.** ***Bear Creek* does not control the outcome of this appeal.**

Highland Greens argues that we must follow *Bear Creek* because there are no other California state court decisions on point. It points out that in the absence of a state supreme court decision on the issue, a federal court is obligated to follow a decision of an intermediate court of appeal unless there is convincing evidence that the highest court of the state would decide differently. *Sec. Pac. Nat'l Bank v. Kirkland (In re Kirkland)*, 915 F.2d 1236, 1238-39 (9th Cir. 1990) (citing *American Triticale, Inc. v. Nytco Services, Inc.*, 664 F.2d 1136, 1143 (9th Cir. 1981); *Stoner v. New York Life Ins. Co.*, 311 U.S. 464, 467 (1940)).

In predicting how the state's highest court would decide the issue, we look to "intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *In re Kirkland*, 915 F.2d at 1239 (citations omitted). *Bear Creek* appears to be the only California intermediate appellate decision addressing the propriety of continuing liens under the Davis Stirling Act. Nevertheless, for the reasons discussed below, we conclude that *Bear Creek* is factually distinguishable and that the California Supreme Court would not likely decide the issue in accord with *Bear Creek*.

In determining that delinquent HOA assessments which came due after the recordation of the lien notices were properly included in the amount secured by the lien, the court of appeal in *Bear Creek* relied primarily on the language of the CC&Rs and the lien notices, all of which provided that any lien for delinquent HOA assessments would be deemed to include subsequent delinquencies. Because certain provisions of the Act referred to the HOA's governing documents, and those documents provided for a continuing lien, the *Bear Creek* court concluded that the continuing lien was consistent with the Act.

Here, however, the CC&Rs do not provide for a continuing lien; as such, *Bear Creek* is factually distinguishable in a critical respect, and we may ignore it. Further and importantly, relevant to our anticipation of the California Supreme Court's eventual view, the *Bear Creek* court of appeal

19

did not take into account the Act's notice provisions as they pertained to the issue of a continuing lien and failed to consider that, although one purpose of the Act may be to facilitate an HOA's collection of delinquent assessments, *see Bear Creek*, 130 Cal. App. 4th at at 1489,[9] the cases citing directly to legislative history emphasize that the purpose of the Davis-Stirling Act is to protect homeowners. *See Diamond*, 217 Cal. App. 4th at 1190 ("This bill goes to the heart of home owner rights, touching upon the key issue of when, if ever, a homeowners' association should have the right to force the sale of a member's home when the home owner falls behind on paying overdue assessments or dues.") (quoting Assem. Com. on Judiciary, Analysis of Sen. Bill No. 137 (2005–2006 Reg. Sess.) *as amended* Apr. 5, 2005, pp. 1–2); *Huntington Continental Townhouse Ass'n, Inc. v. Miner*, 230 Cal. App. 4th 590, 603-04 (2014) (same).

Although *Diamond* did not involve the identical issue raised here, the opinion's thorough analysis of the legislative history and citations to precedent all supported its determination that the requirements of the Davis-Stirling Act must be strictly construed, and support the conclusion

[9]In concluding that the purpose of the Act was to facilitate collection of delinquent assessments, the court of appeal in *Bear Creek* relied on quoted language from *Park Place Estates Homeowners Ass'n v. Naber*, 29 Cal. App. 4th 427, 432 (1994) ("Because homeowners associations would cease to exist without regular payment of assessment fees, the Legislature has created procedures for associations to quickly and efficiently seek relief against a non-paying owner."). But the court of appeal in *Park Place Estates* did not support its conclusion by any citation to legislative history.

that the California Supreme Court would not follow *Bear Creek*. This conclusion is bolstered by the analysis in *Guajardo* and *Warren*. As noted by the District Court for the Northern District of California:

> The Davis-Stirling Act reflects the legislature's intent to impose and rigorously enforce its procedural requirements to protect the interest of the homeowner. *See Diamond v. Superior Court*, 217 Cal. App. 4th 1172, 1191 (2013) (the procedural notice requirements prescribed in the Davis-Stirling Act must be "strictly construed" such that "substantial compliance is insufficient"). Accordingly, the Court finds that the language of the 2008 Lien purporting to secure future assessments is not permissible under the Davis-Stirling Act.

*In re Warren*, 2016 WL 1460844, at *4.

Applying these principles to the matter before us, we conclude that here, the Notice and 2011 Amendment, which purported to secure future assessments, were (1) inconsistent with the applicable CC&Rs; and (2) impermissible under the Davis-Stirling Act, which limits the lien to the amount specified in the notice, *see* Cal. Civ. Code § 5675(a); in turn, the notice must include an itemized statement showing the **delinquent** assessments (and related fees and costs) owing at the time of the notice. *See* Cal. Civ. Code § 5660(b); *See also In re Guajardo*, 2016 WL 943613, at *2-*3.

E. **Highland Greens' arguments in support of its interpretation of the Davis Stirling Act are inconsistent with established principles of statutory construction.**

In the absence of evidence of contrary legislative intent, courts are to

follow the principle of statutory construction, *expressio unius est exclusio alterius*, or "the expression of one thing in a statute ordinarily implies the exclusion of other things." *In re J.W.*, 29 Cal. 4th 200, 209 (2002). *See also People v. Guzman*, 35 Cal. 4th 577, 587 (2005) ("[I]nsert[ing] additional language into a statute violate[s] the cardinal rule of statutory construction that courts must not add provisions to statutes.")(second and third alterations in original)(quoting *Sec. Pac. Nat'l Bank v. Wozab*, 51 Cal. 3d 991, 998 (1990)); Cal. Civ. Proc. Code § 1858 ("In the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all.").

Highland Greens argues that certain provisions of the Davis-Stirling Act support its contention that a continuing lien is permitted under that Act. First, it notes that California Civil Code § 5650 permits collection costs to be added to the amount secured by the lien, when those costs are generally incurred after the lien is recorded.[10] But this provision does not support Highland Greens' position. To the contrary, the legislature's

---

[10]California Civil Code § 5650 merely lists the types of costs that may be added to the amount of delinquent assessments. California Civil Code § 5675 provides that the assessed costs and interest will be part of the lien.

omission of subsequent delinquent assessments from the list of charges authorized strongly indicates that it did not intend those amounts to be added.

Despite the above argument, Highland Greens also contends that, if we affirm the bankruptcy court's ruling, it would mean that a delinquent owner would be able to stop a foreclosure sale by paying only the face amount of the lien without paying the costs of enforcing the lien, apparently assuming an HOA would need to record separate liens to secure collection costs. But, as Highland Greens points out, the statute explicitly provides that the lien may include collection costs.

Second, Highland Greens cites California Civil Code § 5720(b)(2), which permits an HOA to record a lien for less than $1,800 but requires the HOA to wait to foreclose until the amount of delinquent assessments exceeds that amount (or the assessments secured by the lien become more than twelve months delinquent).[11] Highland Greens argues that, because

---

[11]That statute provides, in relevant part:

> An association that seeks to collect delinquent regular or special assessments of an amount less than one thousand eight hundred dollars ($1,800), not including any accelerated assessments, late charges, fees and costs of collection, attorney's fees, or interest, may not collect that debt through judicial or nonjudicial foreclosure, but may attempt to collect or secure that debt in any of the following ways:
> . . . .
> (2) By recording a lien on the owner's separate interest upon which

(continued...)

this provision apparently allows for the addition of subsequent delinquent assessments to the lien amount, **any** lien may include such assessments without requiring a new notice. But the fact that this provision applies only to liens securing amounts less than $1,800 supports the conclusion that it **excludes** liens securing higher amounts. In other words, the provision may fairly be interpreted as an exception to the general rule prohibiting addition of delinquencies without specific notice. Additionally, this provision, as written, promotes the purpose of protecting "owners' equity in their homes when they fail to pay relatively small assessments to their common interest development associations." *Diamond*, 217 Cal. App. 4th at 1190 (quoting Sen. Com. on Judiciary, Analysis of Sen. Bill No. 137 (2005–2006 Reg. Sess.) Mar. 29, 2005, p. 1.). As stated by the district court in *Warren*:

> Section 5720(b)(2) simply provides an association with the option to wait to record the lien until delinquent assessments exceed $1,800. Alternatively, the association may record the lien and wait a year to foreclose thereon. . . . Section 5720(b)(2) does not allow an association to bypass the notice and recording

---

[11](...continued)
the association may not foreclose until the amount of the delinquent assessments secured by the lien, exclusive of any accelerated assessments, late charges, fees and costs of collection, attorney's fees, or interest, equals or exceeds one thousand eight hundred dollars ($1,800) or the assessments secured by the lien are more than 12 months delinquent. . . .

Cal. Civ. Code § 5720(b)(2).

requirements in Sections 5660, 5670, and [5675] merely because the initial lien secures an amount below the $1,800 threshold to initiate foreclosure proceedings.

*In re Warren*, 2016 WL 1460844, at *4 (footnote omitted).

**F.    Highland Greens' policy arguments are contradicted by the California Court of Appeal's holding in *Diamond*.**

Finally, Highland Greens, (joined by amicus curiae Community Associations Institute), urges us to follow *Bear Creek* and reverse the bankruptcy court because to do otherwise would negatively impact all California HOAs and their members. Highland Greens contends that HOAs would have to record liens for delinquent assessments on a monthly basis to secure all amounts owed, and that doing so would result in higher collection costs that would then be passed on to the delinquent owner.

This argument is certainly consistent with the court of appeal's comments in *Bear Creek*, 130 Cal. App. 4th at 1489. But it ignores the fact that the Davis-Stirling Act "reflects the legislature's intent to impose and rigorously enforce its procedural requirements to protect the interest of the homeowner." *In re Warren*, 2016 WL 1460844, at *4 (citing *Diamond*, 217 Cal. App. 4th at 1191). While we acknowledge that requiring HOAs to file "successive liens" imposes a burden, that is an issue for the legislature to address.

## CONCLUSION

Because we find no error in the bankruptcy court's interpretation of

California law, we AFFIRM.