Filed 4/29/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE CHEMICAL TOXIN WORKING GROUP, INC., | B341662 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 23STCV16358) |
| v. | |
| THE KROGER COMPANY et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara Meiers, Judge. Reversed and remanded.

Poulsen Law, Aida Poulsen, Peter T. Sato; Keiter Appellate Law and Mitchell Keiter for Plaintiff and Appellant.

Nixon Peabody, Gregory P. O'Hara and Lauren M. Michals for Defendants and Respondents.

———————————————

This appeal concerns the adequacy of the pre-suit notice plaintiff The Chemical Toxin Working Group, Inc., doing business as Healthy Living Foundation, Inc. (HLF), provided to defendants The Kroger Company, Ralphs Grocery Company, Hughes Markets, Inc., and Maplebear Inc., pursuant to the Safe Drinking Water and Toxic Enforcement Act of 1986 (Health & Saf. Code, § 25249.5 et seq.), adopted by California voters in 1986 as Proposition 65 (Proposition 65, or the Act).

Proposition 65 requires businesses to provide clear and reasonable warnings before exposing individuals to chemicals known to the state to cause cancer or reproductive toxicity. (Health & Saf. Code, § 25249.6.) Private individuals acting in the public interest may bring enforcement actions against alleged violators of Proposition 65 where: 1) the private individual has provided notice of the violation to the Attorney General, district and city attorneys, and the alleged violators; and 2) 60 days have passed without a prosecuting agency commencing an enforcement action. (*Id.*, § 25249.7, subd. (d)(1)–(2).)

Regulations implementing the 60-day notice requirement provide that "the notice shall identify: [¶] (1) the name, address, and telephone number of the noticing individual or a responsible individual within the noticing entity and the name of the entity; [¶] (2) the name of the alleged violator or violators; [¶] (3) the approximate time period during which the violation is alleged to have occurred; and [¶] (4) the name of each listed chemical involved in the alleged violation." (Cal. Code Regs., tit. 27, § 25903, subd. (b)(2)(A) (section 25903).)

The trial court granted defendants' motion for judgment on the pleadings on the ground that HLF's 60-day notice failed to provide the contact information of "a responsible individual

2

*within the noticing entity*." (§ 25903, subd. (b)(2)(A)(1), italics added.)  Rather, HLF's 60-day notice provided contact information for its outside counsel.

The Fourth District Court of Appeal recently considered whether a Proposition 65 action was invalidated by the plaintiff's failure to strictly comply with section 25903's requirement that contact information be provided for a responsible person within the noticing entity.  (*Environmental Health Advocates, Inc. v. Pancho Villa's, Inc.* (2026) 118 Cal.App.5th 778 (*Pancho Villa's*).)  The *Pancho Villa's* court determined that section 25903 is directory, not mandatory, and the plaintiff's 60-day notice, which provided the contact information for plaintiff's retained counsel, substantially complied with section 25903.  (*Pancho Villa's*, at p. 798.)

We find *Pancho Villa's* persuasive and conclude the 60-day notice in this case also substantially complied with section 25903.  We therefore reverse the judgment and remand for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

***Proposition 65***

Proposition 65 requires the state to develop and maintain a list of chemicals "known to the state to cause cancer or reproductive toxicity."  (Health & Saf. Code, § 25249.8, subd. (a).)  It also states that "[n]o person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual . . . . ," except as otherwise provided by the statute.  (*Id.*, § 25249.6.)  Proposition 65 is "a remedial statute intended to protect the public."  Our high court has "construe[d] the statute

3

broadly to accomplish that protective purpose." (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 314.)

Enforcement actions "may be brought by the Attorney General in the name of the people of the State of California, by a district attorney, by a city attorney of a city having a population in excess of 750,000, or, with the consent of the district attorney, by a city prosecutor in a city or city and county having a full-time city prosecutor." (Health & Saf. Code, § 25249.7, subd. (c).) A private citizen may also bring an action to enforce Proposition 65 provided that: (1) at least 60 days before filing a lawsuit the citizen gives notice to the alleged violator, the Attorney General, and district attorneys and city attorneys in the jurisdiction where the violation occurred; and (2) no public official has already commenced prosecution of the same violation. (*Ibid.*, subd. (d)(1) –(2).)

"If the notice alleges a violation of [Health and Safety Code] Section 25249.6, the notice of the alleged violation shall include a certificate of merit executed by the attorney for the noticing party, or by the noticing party, if the noticing party is not represented by an attorney. The certificate of merit shall state that the person executing the certificate has consulted with one or more persons with relevant and appropriate experience or expertise who has reviewed facts, studies, or other data regarding the exposure to the listed chemical that is the subject of the action, and that, based on that information, the person executing the certificate believes there is a reasonable and meritorious case for the private action." (Health & Saf. Code, § 25249.7, subd. (d)(1).)

***Regulations Governing 60-day Notices***

The Governor designated the Office of Environmental Health Hazard Assessment (OEHHA) as the " '[l]ead agency' " to implement Proposition 65. (Cal. Code Regs., tit. 27, § 25102, subd. (o); Health & Saf. Code, § 25249.12, subd. (a).) "Because the statute provides relatively little definition of the notice requirements," OEHHA adopted regulations to specify the requirements for the 60-day notices. (OEHHA, Final Statement of Reasons, Adopt Section 12903, Notices of Violation, Title 22, Division 2, California Code of Regulations (1997) pp. 2–3 (Final Statement of Reasons) <https://oehha.ca.gov/sites/default/files/media/sec_12903_fsor_1996.pdf> [as of April 28, 2026], archived at <https://perma.cc/HE8C-EMRE>.)[1]

In the Final Statement of Reasons, OEHHA explained that it proposed the adoption of section 25903 "to assure that [60-day] notices actually further" three main purposes. (Final Statement of Reasons, *supra*, at p. 4.)

"[T]he first focus of citizen suit notice is to enable the prosecutor 'intelligently' to decide whether to file suit. Where a notice provides no real description of the claim, it cannot perform that function." (Final Statement of Reasons, *supra*, at p. 3.)

"Second, the notice allows a defendant an opportunity to cure the violation. . . . Once informed of the violation, the defendant can bring the violation to a halt, and at least prevent

---

[1]     California Code of Regulations, title 22, section 12903 was renumbered to section 25903 without substantive change. (Cal. Code Regs., tit. 22, § 25903, Register 2008, No. 25 (June 20, 2008) pp. 1021–1022.) We hereafter refer to section 12903 by its current section number.

the accrual of any further liability for penalties.  While this would not by itself necessarily prevent a civil action, since a plaintiff may sue for penalties for past violations, the limitation of continuing liability nonetheless is quite significant." (Final Statement of Reasons, *supra*, at p. 3.)

Third, OEHHA explained that "[a]s a condition precedent to establishing a citizen's right to proceed in the public interest on that matter, and to collect funds for the public treasury, the notice requirement should not be dismissed as a mere technicality." (Final Statement of Reasons, *supra*, at p. 3.)  The notice provisions "are important not only in enabling law enforcement officials to investigate a notice, but in defining the scope of the private person's right to sue under the statute." (*Id.* at p. 4.)  Thus, "violations that are not adequately described in the notice cannot properly be a part of the private action." (*Ibid.*)

Section 25903, subdivision (a), provides: "For purposes of Section 25249.7(d) of the Act, 'notice of the violation which is the subject of the action' (hereinafter 'notice') shall mean a notice meeting all requirements of this section.  No person shall commence an action to enforce the provisions of the Act 'in the public interest' pursuant to Section 25249.7(d) of the Act except in compliance with all requirements of this section."

Section 25903, subdivision (b)(1), requires that a notice include as an attachment a copy of a summary of Proposition 65 prepared by OEHHA.

Section 25903, subdivision (b)(2), states: "A notice shall provide adequate information from which to allow the recipient to assess the nature of the alleged violation, as set forth in this paragraph.  The provisions of this paragraph shall not be interpreted to require more than reasonably clear information,

6

expressed in terms of common usage and understanding, on each of the indicated topics." It further provides that all notices "shall identify: [¶] (1) the name, address, and telephone number of the noticing individual or a responsible individual within the noticing entity and the name of the entity; [¶] (2) the name of the alleged violator or violators; [¶] (3) the approximate time period during which the violation is alleged to have occurred; and [¶] (4) the name of each listed chemical involved in the alleged violation." (*Id.*, subd. (b)(2)(A).)

The notice must also identify "the route of exposure by which exposure is alleged to occur (e.g., by inhalation, ingestion, dermal contact)" (§ 25903, subd. (b)(2)(C)), and "the name of the consumer product or service, or the specific type of consumer product or services, that cause the violation, with sufficient specificity to inform the recipients of the nature of the items allegedly sold in violation of the law and to distinguish those products or services from others sold or offered by the alleged violator for which no violation is alleged." (*Id.*, subd. (b)(2)(D).)

***HLF's 60-Day Notice***

On August 26, 2022, Poulsen Law, P.C. (Poulsen Law) on behalf of HLF, served defendants, the Office of the Attorney General, and the District Attorneys of California Counties and City Attorneys with a document titled "Sixty-Day Notice of Intent to Sue for Violation of the Safe Drinking Water and Toxic Enforcement Act of 1986" (the Notice). The Notice asserted that a specific brand of farm-raised mussels sold by defendants contained cadmium, lead, and lead compounds, which are listed under Proposition 65 as chemicals known to the State of California to cause developmental toxicity, reproductive toxicity, and cancer. The Notice also claimed that defendants had failed

7

to provide a warning to consumers "that persons handling, ingesting and/or otherwise using the Specified Product are being exposed to cadmium and lead." It attached a certificate of merit signed by Aida Poulsen, Poulsen Law's managing attorney, and a summary of Proposition 65.

The Notice identified David Steinman as HLF's chief officer but did not provide his contact information. The Notice listed the phone number and address of Poulsen Law in the header on its first page. It concluded with an instruction to "direct all communications regarding this Notice to this office" and was signed by Poulsen. The Notice provided an e-mail address for Poulsen Law under Poulsen's signature.

***The Lawsuit***

In July 2023, HLF filed a lawsuit against defendants asserting a cause of action for failure to provide a clear and reasonable warning in violation of Health and Safety Code section 25249.6. The complaint alleged more than 60 days had passed since HLF served the Notice, and the Attorney General had not filed a public enforcement action. HLF sought civil penalties, injunctive relief, and reasonable attorney fees and costs.[2]

In August 2024, defendants moved for judgment on the pleadings. Defendants argued that the Notice did not strictly or

---

[2] In February 2024, HLF served a second 60-day notice on defendants, the Office of the Attorney General, and the District Attorneys of California Counties and City Attorneys. In addition to the mussels identified in the Notice, the second notice claimed a brand of farm-raised clams sold by defendants allegedly contained lead, lead compounds, and cadmium, and defendants had failed to provide a warning to consumers that they were

substantially comply with Proposition 65's pre-suit notice requirements because it failed to identify the name, address, and telephone number of the noticing individual *within* the noticing entity and instead provided the name and contact information for HLF's outside counsel.

The trial court granted the motion for judgment on the pleadings "for all the reasons stated in the defendants' papers as well as by the Court during argument."[3] The court entered judgment accordingly.

HLF timely appealed.

### *Pancho Villa's*

While this appeal was pending, the Fourth District issued its decision in *Pancho Villa's*.[4]

The trial court in *Pancho Villa's* concluded the plaintiff's Proposition 65 notice letter was defective because it provided the contact information for the plaintiff's "retained counsel" rather than contact information for a " ' "*responsible individual within the noticing entity*." ' " (*Pancho Villa's*, *supra*, 118 Cal.App.5th at p. 793.)

---

being exposed to these chemicals. In May 2024, HLF moved to amend the complaint to include the allegations in the second notice. The trial court denied the motion. The parties represent that HLF filed a second action based on the Notice and the second notice, but there is no evidence in the record before us of that action or its status.

[3] The appellate record does not include a record of the oral proceedings in the trial court.

[4] At our invitation, the parties submitted supplemental letter briefs addressing *Pancho Villa's*.

The appellate court reversed. It held that Proposition 65's notice requirements were directory, rather than mandatory, and their purpose could therefore be served by substantial compliance. (*Pancho Villa's*, *supra*, 118 Cal.App.5th at p. 798.) The court reached this conclusion by considering the "three core functions" of Proposition 65's 60-day notice, as set forth in the Final Statement of Reasons: "to provide information necessary to (1) enable prosecuting agencies to ' "intelligently" ' assess whether to investigate and to file an enforcement action on behalf of the public; (2) allow violators 'an opportunity to cure the violation' and 'at least prevent the accrual of any further liability for penalties'; and (3) to 'defin[e] the scope of the private person's right to sue under the statute.' [Citations.]" (*Id.* at p. 795.) Because failure to provide contact information for " 'a responsible individual *within the noticing entity*' " does not defeat any of these objectives, the court concluded section 25903 is to be given directory effect. (*Pancho Villa's*, at p. 795.)

The court observed that OEHHA's only comment regarding the requirement that the 60-day notice provide the name, address, and telephone number of the noticing individual or responsible individual within the noticing entity was the " '[i]dentification of the party giving the notice is needed to give the receiving parties an opportunity to contact the noticing party to resolve the issues raised in the notice and to identify who will be entitled to pursue a civil action' [citation]." (*Pancho Villa's*, *supra*, 118 Cal.App.5th at p. 797.) It concluded that "[d]irect contact between the noticed entity and the noticing party's principal is not essential" to advance the purposes of promoting dialogue or giving the alleged violator an opportunity to cure the alleged violations, or any of the other core functions of the notice.

10

(*Ibid*.) "Indeed, there is no 'detailed and specific' mandate which requires or explains why contact must occur directly between the noticed party and noticing party." (*Ibid*.)

The *Pancho Villa's* court next considered whether the plaintiff had substantially complied with Proposition 65's notice regulations when it provided the defendant with the name and number of retained counsel and directed that counsel be contacted for any questions or discussion. (*Pancho Villa's*, *supra*, 118 Cal.App.5th at pp. 798–799.) The court concluded that "[p]roviding an attorney's contact information does not undermine any of Proposition 65's objectives and substantially complies with the notice requirement." (*Id*. at p. 799.) It located no support for the trial court's conclusion that the intent of pre-suit notice was to enable businesses receiving Proposition 65 notices " 'to economically and efficiently address concerns raised in the pre-suit notice by directly communicating with the private citizen enforcer.' " (*Ibid*.) Rather, "[b]y identifying outside counsel, [the plaintiff] provided 'an opportunity' for [the defendant] to contact [the plaintiff] through its counsel. The ability for [the plaintiff] to exchange information with [the defendant] turns on whether [the plaintiff's] designated contact person has sufficient knowledge of the alleged violation. His or her employment position does not affect whether that core objective is obtained." (*Ibid*.)

The appellate court disagreed with the trial court's "pronouncement that it 'becomes a cumbersome, expensive process if the targeted business is forced to communicate through counsel' . . . ." (*Pancho Villa's*, *supra*, 118 Cal.App.5th at p. 799.) It instead observed that counsel "may, in fact, be in the best position to communicate about the alleged violation" because the

11

certificate of merit must be signed by the noticing party's attorney if the noticing party is represented.  (*Ibid*.)  A retained attorney who consulted with experts regarding the details of the exposure and evaluated the merits of the enforcement action "is thus well positioned to communicate with alleged violators and public enforcers."  (*Ibid*.)  In response to the lower court's reasoning, the appellate court explained that "[a]ttorney involvement is also appropriate because actions are generally brought against larger companies" and "settlements are highly technical, involve scientific analysis and multiple legal requirements, and must be approved by the California Attorney General and published on its website."  (*Id*. at pp. 799–800.)

Finally, the Court of Appeal rejected the trial court's assertion that the " 'requirement ensures that the private enforcer is genuine, and not simply a "straw person" used by a law firm seeking only to generate legal fees.' "  (*Pancho Villa's*, *supra*, 118 Cal.App.5th at p. 800.)  "[W]hile it is appropriate for a trial court to 'ensure that its judgment serves the public interest' in a Proposition 65 action [citation], there is no indication OEHHA intended noticed parties to undertake this type of inquiry."  (*Ibid*.)  The court observed that plaintiffs had alleged the existence of a known carcinogen in a product sold by the defendant.  (*Ibid*.)  Irrespective of the plaintiff's motives in commencing the action, " ' "the public always has a significant interest in seeing that legal strictures are properly enforced and thus, in a real sense, the public always derives a 'benefit' when illegal private or public conduct is rectified." ' [Citation.]"  (*Ibid*.)

12

## DISCUSSION[5]

HLF contends that section 25903, subdivision (b)(2)(A)(1), is directory and HLF substantially complied with its requirements by providing the name and contact information for outside counsel. HLF also argues that its notice complied with the literal requirements of section 25903, subdivision (b)(2)(A)(1).

Defendants contend HLF's notice did not satisfy the statute's plain language and this court need proceed no further to affirm the judgment. Defendants further argue that strict compliance is required under tests set forth in *Prang v. Los Angeles County Assessment Appeals Bd. No. 2* (2020) 54 Cal.App.5th 1 (*Prang*), and HLF neither strictly nor substantially complied with section 25903.

For purposes of argument, we assume the Notice did not satisfy the literal requirements of section 25903, subdivision (b)(2)(A)(1), because it did not provide the contact information for Steinman or another person within HLF.

---

[5] We deny HLF's request for judicial notice of 20 trial court orders concerning the adequacy of 60-day notices "because 'only *relevant* material may be [judicially] noticed,'" and trial court decisions are "not relevant." (*Sandhu v. Board of Administration* (2025) 108 Cal.App.5th 1048, 1061, fn. 4 [declining to take judicial notice of trial court decisions in four related cases]; see also *Pereira-Goodman v. Anderson* (1997) 54 Cal.App.4th 864, 872, fn. 5 [declining to take judicial notice of superior court decisions, which "do not have precedential value"].) We grant defendants' request for judicial notice of the Notice and Final Statement of Reasons. (Evid. Code, §§ 452, subds. (b), (c), (h), 459, subd. (a).) We deny defendants' request for judicial notice of other materials because they are unnecessary to our resolution of the appeal. (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 613, fn. 29.)

13

Accordingly, we do not address the parties' arguments regarding whether outside counsel, as an agent of the noticing entity, is a "responsible individual within the entity."[6] We instead focus our analysis on the doctrine of substantial compliance.

"Our review of all issues in this appeal is de novo because it involves review of an order granting judgment on the pleadings [citation], interpretation of a regulation [citation], and determination of whether a Proposition 65's 60-day notice complies with statutory requirements [citation]." (*Pancho Villa's*, *supra*, 118 Cal.App.5th at pp. 793–794.)

## I. The Doctrine of Substantial Compliance Applies To Section 25903, subdivision (b)(2)(A)(1)

" ' "Substantial compliance, as the phrase is used in decisions, means *actual* compliance in respect to the substance

---

[6] Defendants requested leave to file a supplemental opposition brief on the ground that HLF raised the argument that outside counsel can be the "noticing individual" under the literal meaning of section 25903 for the first time in its reply brief. They also contended that HLF improperly relied on new authorities to propose "a blanket rule that only substantial compliance is needed with *all* statutory or regulatory requirements that the name and address and phone number of a potential litigant be provided in a pre-suit notice."

We denied defendants' request to file a supplemental opposition brief. We do not reach the argument concerning the literal meaning of "noticing individual." Further, a party "may cite new authorities in support of arguments properly raised in the opening brief." (*American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 276.) HLF cites the new cases to support the contention made in its opening brief that it substantially complied with section 25903 by providing contact information for its counsel.

14

essential to every reasonable objective of the statute," as distinguished from "mere technical imperfections of form." ' [Citations.]" (*Hanf v. Sunnyview Development, Inc.* (1982) 128 Cal.App.3d 909, 916; accord, *Andrews v. Metropolitan Transit System* (2022) 74 Cal.App.5th 597, 606 (*Andrews*).) " ' "[E]ach objective or purpose of a statute must be achieved in order to satisfy the substantial compliance standard," ' " but " ' " 'actual compliance' with every specific statutory requirement" ' " is not required. (*Andrews*, at p. 606.) Put another way, the doctrine of substantial compliance " ' "excuses literal noncompliance *only* when there has been 'actual compliance in respect to the substance essential to *every reasonable objective of the statute.*' " ' [Citation.]" (*Id*. at p. 607.)

"[T]he doctrine of substantial compliance does *not* apply at all when a statute's requirements are *mandatory*, instead of merely directory. [Citations.] A mandatory statute 'is one that is essential to the promotion of the overall statutory design and thus does not permit substantial compliance. [Citation.]' [Citation.]" (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1333.)

Thus, we first consider whether section 25903, subdivision (b)(2)(A)(1), is directory or mandatory.

### A.     Section 25903, subdivision (b)(2)(A)(1), is directory

"[T]here is no simple, mechanical test for determining whether a provision should be given 'directory' or 'mandatory' effect. 'In order to determine whether a particular statutory provision . . . is mandatory or directory, the court, as in all cases of statutory construction and interpretation, must ascertain the legislative intent. . . . When the object is to subserve some public

15

purpose, the provision may be held directory or mandatory as will best accomplish that purpose [citation] . . . .' " (*Morris v. County of Marin* (1977) 18 Cal.3d 901, 909–910, fn. omitted.)

"[S]ubstantial compliance is presumed to satisfy the intent of the Legislature," even if a statute does not expressly permit substantial compliance. (*San Diegans for Open Government v. City of Oceanside* (2016) 4 Cal.App.5th 637, 647.) "Even when a statute employs 'mandatory' terms, ' "[i]f a statutory directive does not go to ' "the essence" of the particular object sought to be obtained, or the purpose to be accomplished' and a 'departure from the statute will cause no injury to any person affected by it,' the provision will be deemed directory." ' [Citation.]" (*Mission Springs Water Dist. v. Desert Water Agency* (2024) 101 Cal.App.5th 413, 433; accord, *Manderson-Saleh v. Regents of University of California* (2021) 60 Cal.App.5th 674, 703 (*Manderson-Saleh*) ["even when a statute uses 'mandatory' terms, substantial compliance with statutory directives will suffice if the purpose of the statute is satisfied"].) " '[T]he paramount consideration is the objective of the statute.' [Citation.]" (*Manderson-Saleh*, at p. 703.) Courts have applied these principles to regulations. (*Ibid*.)

In the Final Statement of Reasons, OEHHA identified three purposes underlying section 25903. The core functions of the notice are "to provide information necessary to (1) enable prosecuting agencies to ' "intelligently" ' assess whether to investigate and to file an enforcement action on behalf of the public; (2) allow violators 'an opportunity to cure the violation' and 'at least prevent the accrual of any further liability for penalties'; and (3) to 'defin[e] the scope of the private person's right to sue under the statute.' " (*Pancho Villa's*, *supra*, 118

16

Cal.App.5th at p. 795, quoting Final Statement of Reasons, *supra*, at pp. 3–4.)

Each of these purposes requires that the 60-day notice provide sufficient information about the *violation*. OEHHA explained that a 60-day notice fails to permit a prosecutor to intelligently decide whether to file suit when it "provides no real description of the claim." (Final Statement of Reasons, *supra*, at p. 3.) Similarly, with respect to the second purpose, OEHHA explained that "the alleged violator must be provided sufficient information to bring itself into compliance because it is compliance with the Proposition 65 requirements that protects the public and the environment." (*Ibid*.) The final objective is to limit the scope of a private citizen enforcement action to those claims that were adequately described in the 60-day notice. (*Id.* at pp. 3–4.) OEHHA observed that, in the years preceding the adoption of section 25903, "many notices d[id] not describe the nature of the alleged violation in an intelligible manner." (Final Statement of Reasons, at p. 7.) The identification of outside counsel, rather than a responsible individual within the noticing entity, does not go to the essence of these objectives.

OEHHA's only statement concerning section 25903, subdivision (b)(2)(A)(1), was that "[i]dentification of the party giving the notice is needed to give the receiving parties an opportunity to contact the noticing party to resolve the issues raised in the notice and to identify who will be entitled to pursue a civil action." (Final Statement of Reasons, *supra*, at p. 8.) We agree that "[d]irect contact between the noticed entity and the noticing party's principal is not essential to promoting this purpose" in the absence of any " 'detailed and specific' mandate which requires or explains why contact must occur directly

17

between the noticed party and noticing party." (*Pancho Villa's*, *supra*, 118 Cal.App.5th at p. 797.)

Defendants rely on *DiPirro v. American Isuzu Motors, Inc.* (2004) 119 Cal.App.4th 966, 975 (*DiPirro*), to contend a central purpose of pre-suit notice is to facilitate resolution of Proposition 65 matters "before a suit is filed, defense lawyers are hired and a litigation posture is developed." However, *DiPirro* concerned a plaintiff's failure to serve certificates of merit before filing a Proposition 65 enforcement action and considered whether post-filing service of the certificates cured that failure. (*Id.* at p. 972.) The court concluded it did not. The legislation requiring the service of a certificate of merit and disclosure of the factual basis for the certificate of merit to the Attorney General was intended to "increase[] the Attorney General's understanding of the claim's likelihood of success, allowing that office to focus its efforts to discourage filing of the truly frivolous" *before* an action was filed. (*Id.* at p. 974.) In reaching its conclusion, the court also cited regulations that "set out in detail what factual material must be provided [in the notice of violation provided to the Attorney General] (Cal. Code Regs., tit. 11, § 3102) and authorize contacts between the Attorney General and the noticing party (Cal. Code Regs., tit. 11, § 3103, subd. (b))." (*Ibid.*) *DiPirro* did not address the purposes of section 25903 or partial noncompliance with its notice requirements.

Nothing in the Final Statement of Reasons suggests that forestalling litigation was a motivating purpose of section 25903 generally, or of subdivision (b)(2)(A)(1) specifically. Rather, OEHHA indicated that the regulation's purpose was to provide sufficient information to allow a violator promptly to "bring *the violation* to a halt, and at least prevent the accrual of any further

18

liability for penalties." (Final Statement of Reasons, *supra*, at p. 3, italics added.) Indeed, OEHHA recognized that halting a violation "would not by itself necessarily prevent a civil action, since a plaintiff may sue for penalties for past violations." (*Ibid*.)

Defendants further contend that strict compliance with section 25903 is required to fulfill the 60-day notice's purpose of deterring unscrupulous private enforcers. Undoubtedly, the 60-day notice is intended to prevent the filing of baseless lawsuits and lawsuits of indefinite scope. (Final Statement of Reasons, *supra*, at pp. 3–4, 7–8; see also *DiPirro*, *supra*, 119 Cal.App.4th at p. 970 [legislation requiring service of certificate of merit "was prompted by a concern that private enforcers were abusing Proposition 65 by filing meritless lawsuits alleging that businesses had failed to provide adequate warnings about chemical discharges"].)

However, defendants appear to argue that, even if a noticing party identifies an alleged violation with the required specificity, a distinct purpose of section 25903 is to deter actions filed by "lawyer bounty hunters," and to ensure enforcers are "legitimately pursuing the claim in the public interest," by enabling alleged violators to "fully evaluate who is threatening legal action." We agree with the *Pancho Villa's* court that "while it is appropriate for a trial court to 'ensure that its judgment serves the public interest' in a Proposition 65 action [citation], there is no indication OEHHA intended noticed parties to undertake this type of inquiry." (*Pancho Villa's*, *supra*, 118 Cal.App.5th at p. 800.)

Defendants also cite OEHHA's statement that the language of section 25903, subdivision (a), was intended "to make clear that a non-complying notice does not leave the court with

19

authority to fashion whatever remedy it deems appropriate, but instead means that the private person had no legal ability to commence an action under the statute." (Final Statement of Reasons, *supra*, at p. 5.) Defendants contend this establishes that strict compliance with section 25903 is mandated.

We note, however, that section 25903, subdivision (b)(2), requires "*adequate* information from which to allow the recipient to assess the nature of the alleged violation" and states "[t]he provisions of this paragraph shall not be interpreted to require more than *reasonably clear* information, expressed in terms of common usage and understanding, on each of the indicated topics." (Italics added.) OEHHA also cautioned that "the proposed regulation is not intended to require that highly technical information be provided, to require disclosure of the evidence by which a violation will be proven, or *to otherwise turn the notice requirement into a trap for the unwary*." (Final Statement of Reasons, *supra*, at p. 16, italics added.) This language supports the conclusion that non-compliance for purposes of section 25903, subdivision (a), should be judged by whether the notice provides adequate information for prosecutors and the alleged violator to assess and address the alleged violation. (Cf. *Life v. County of Los Angeles* (1991) 227 Cal.App.3d 894, 899 [Government Claims Act statutes "should not be used as traps for the unwary where their purpose has been satisfied, and to that end, courts employ a test of substantial compliance rather than strict compliance"].) We reject defendants' argument that the "trap for the unwary" language was intended to relate solely to section 25903, subdivision (b)(4). Although it appears in the section of the Final Statement of Reasons concerning subdivision (b)(4), OEHHA prefaces this

20

language with the statement "[a]s noted above (see discussion on paragraph (b)(2) on page 7)," which indicates that this principle relates to section 25903, subdivision (b) more broadly. (Final Statement of Reasons, *supra*, at p. 16.)

We conclude that application of the substantial compliance doctrine to section 25903, subdivision (b)(2)(A)(1), is appropriate and consistent with the purposes of section 25903 and the remedial purpose of Proposition 65.[7]

**B.** ***Prang* does not compel a different conclusion**

In *Prang*, the court held it could infer the Legislature intended a statute's requirements to be followed precisely where "(1) 'the Legislature has provided a detailed and specific mandate' [citations], or (2) 'the intent of [the] statute can only be served by demanding strict compliance with its terms' [citation]." (*Prang*, *supra*, 54 Cal.App.5th at p. 19.) Defendants contend that if either of the *Prang* tests are satisfied, strict compliance is required. They argue that section 25903, subdivision (b)(2)(A)(1), contains a "detailed and specific mandate" and we therefore need proceed no further in our analysis. Defendants additionally

---

[7] Defendants argue there is no evidentiary support for the *Pancho Villa's* court's statements that enforcement "actions are generally brought against larger companies" and "settlements are highly technical, involve scientific analysis and multiple legal arguments." (*Pancho Villa's*, *supra*, 118 Cal.App.5th at pp. 799–800.) Defendants assert that the statements are not categorically true. We need not resolve this issue. We note that the *Pancho Villa's* opinion included the challenged statements to rebut a "pronouncement" of the trial court, which did not appear to relate to any specific language in the regulation or Final Statement of Reasons. (*Id*. at p. 799.) Our analysis is based on the Final Statement of Reasons.

21

argue that the "focus on whether the intent of the statutory provision can only be served by strict compliance" is an outdated approach, and courts have more recently relied on a statute's language to decide whether strict compliance is required. We disagree.

The " 'detailed and specific mandate' " test is only briefly discussed in *Prang*. In two sentences, the court concluded the test was met because the relevant statute provided requirements for filing a " 'change in ownership statement.' " (*Prang*, *supra*, 54 Cal.App.5th at p. 20.)

Yet, *Harold L. James, Inc. v. Five Points Ranch, Inc.* (1984) 158 Cal.App.3d 1 (*Harold L. James*), which *Prang* quoted in support of this test, did not state that such a mandate exists whenever a statute uses mandatory language. (*Prang*, *supra*, 54 Cal.App.5th at p. 19.) *Harold L. James* surveyed cases applying strict and substantial compliance to provisions of the mechanic's lien law. The court then concluded: "where the Legislature has provided a detailed and specific mandate as to the manner or form of serving notice upon an affected party that its property interests are at stake, any deviation from the statutory mandate will be viewed with extreme disfavor."[8] (*Harold L. James*, at p. 6.) The Legislature had "unmistakably expressed its dissatisfaction with the former statutory language and its manner of its presentation" by amending the mechanic's lien law to require preliminary lien notices to include "a boldface alert to the property owner" providing an "explicit warning of the danger of losing his property in connection with the labor or materials

---

[8]    We note that lien statutes are generally strictly construed. (*Diamond v. Superior Court* (2013) 217 Cal.App.4th 1172, 1193 (*Diamond*).)

22

which were or were to be furnished by the subcontractor giving the notice." (*Id*. at p. 7.) The plaintiffs' notice used outdated statutory language "in rather small print." (*Id*. at p. 3.) The court concluded it was unnecessary to "speculate as to what, if any, deviations from the currently specified statutory lien language might permit a court to determine that such deviations did not render the subsequent lien unenforceable," because the plaintiffs' "complete failure to include the modifications" the Legislature had made to the statute "manifestly does make the resultant lien invalid." (*Ibid*.)

Unlike the Legislature in *Harold L. James*, OEHHA has not "unmistakably expressed its dissatisfaction" with a 60-day notice providing the contact information of the noticing entity's outside counsel. (*Harold L. James*, *supra*, 158 Cal.App.3d at p. 7.) Nothing in the Final Statement of Reasons suggests that OEHHA considered and rejected such language. We are therefore faced with a question the *Harold L. James* court expressly did not answer: what, if any, deviation from the regulation permits us to determine that the Notice is nevertheless compliant with the regulatory purpose.

Nor does *Hub Construction Specialties, Inc. v. Esperanza Charities, Inc.* (2016) 244 Cal.App.4th 855, which *Prang* also cited in support of the " 'detailed and specific mandate' " test, establish that express statutory requirements categorically compel strict compliance. (*Prang, supra*, 54 Cal.App.5th at p. 19.) In *Hub Construction*, the plaintiff was required by statute to prove that notice of a mechanic's lien was served with an affidavit accompanied by a return receipt. (*Hub Construction*, at p. 857.) Although the parties stipulated that the plaintiff served the required notice by certified mail, the plaintiff did not request

23

a return receipt.  (*Id*. at pp. 857–858.)  The trial court dismissed the case because of the plaintiff's failure to strictly comply with the statute.  (*Ibid*.)  The appellate court reversed.  (*Id*. at p. 857.) It observed that "courts do not demand strict compliance with every aspect of the mechanic's lien law," but had concluded only "that '*transmittal* methods and *notice* requirements must be strictly construed.' "  (*Id*. at p. 863, quoting *Harold L. James*, *supra*, 158 Cal.App.3d at p. 7.)  Under the circumstances, the court did " 'not believe that the statute's purpose should, or does, lead to th[e] aridly formalistic result' " reached by the trial court. (*Hub Construction*, at p. 864.)

Thus, neither *Harold L. James* nor *Hub Construction* supports that a "detailed and specific mandate" may be inferred from statutory language alone.

Even if we assumed that section 25903, subdivision (b)(2)(A)(1), reflected a "detailed and specific mandate" from OEHHA based only on its plain language, we would find it necessary to consider the second *Prang* test before determining whether strict compliance with section 25903 is required.  Contrary to defendants' suggestion, recent case law does not establish that the literal language of a statute or regulation definitively settles the question of whether it is mandatory or directory.  (E.g., *Malear v. State of California* (2023) 89 Cal.App.5th 213, 224 ["doctrine of substantial compliance, by its nature, does not require strict compliance" but "excuses strict compliance" when applicable]; *Manderson-Saleh*, *supra*, 60 Cal.App.5th at p. 698 [noncompliance with literal meaning of regulation "does not end the analysis"].)

Moreover, although language in *Prang* suggests that either of its tests is independently sufficient to establish that strict

24

compliance is required, the court only reached its conclusion in that case after considering *both*. (*Prang*, *supra*, 54 Cal.App.5th at pp. 19–22.) Indeed, the *Prang* court's analysis of whether strict compliance was necessary to serve the intent behind the statute was far more in-depth than its analysis of whether there was a detailed and specific mandate. (*Ibid*.) Likewise, in the other decisions defendants cite in support of their claim that the language of the statute is paramount, the courts considered whether the intent of the statute could be served without demanding strict compliance and concluded it could not.[9] We take the same approach.

---

[9] See *2710 Sutter Ventures, LLC v. Millis* (2022) 82 Cal.App.5th 842, 864 (no "actual compliance in respect to the substance of every reasonable objective of" rent ordinance at issue where notice did not fulfill purpose of providing "information regarding the full scope of the right to relocation assistance benefits"); *Andrews*, *supra*, 74 Cal.App.5th at pages 606–607 (where purposes of relevant statute were to inform the claimant of applicable statute of limitations and desirability of promptly consulting an attorney, substantial compliance doctrine did not apply as notice failed to fulfill second objective); *Prang*, *supra*, 54 Cal.App.5th at page 20 (strict compliance with statutory requirement that form be filed with State Board of Equalization was necessary "[t]o ensure that the entity with the most expertise at parsing complex transactions between and among legal entities is given the opportunity to do so"); *Diamond*, *supra*, 217 Cal.App.4th at pages 1190–1192 (legislative history and inclusion of penalty for failure to comply with statutory lien notice requirements demonstrated they were mandatory); *IGA Aluminum Products, Inc. v. Manufacturers Bank* (1982) 130 Cal.App.3d 699, 704 (noncompliant notice did not fulfill statutory purpose where amendment made "manifest

25

For the reasons discussed above, we agree with the *Pancho Villa's* court's conclusion that strict compliance with subdivision (b)(2)(A)(1) is not necessary to effectuate the intent of section 25903.  (*Pancho Villa's, supra,* 118 Cal.App.5th at pp. 795–796.)

C.      **The Notice complied with all reasonable objectives of section 25903**

The Notice identified HLF as the entity entitled to sue, the defendants as alleged violators, the product and toxic chemicals at issue, and the route of exposure.  It attached a certificate of merit and a summary of Proposition 65.  The notice was signed by Aida Poulsen and directed defendants to contact Poulsen Law.

The only difference between the Notice and the notice in *Pancho Villa's* is that the latter concluded with directions to contact a specific attorney for discussion.  (*Pancho Villa's, supra,* 118 Cal.App.5th at p. 792.)  Here, the Notice concluded with an instruction to "direct all communications regarding this Notice to this office" without specifically identifying an attorney.  However, Poulsen signed the letter.  This reasonably indicated that Poulsen, who also signed the certificate of merit, was knowledgeable about the violation and available to discuss the Notice.

The difference is immaterial in light of the purposes of the statute.  We conclude the Notice substantially complied with section 25903's objective of "giv[ing] the receiving parties an opportunity to contact the noticing party to resolve the issues raised in the notice and to identify who will be entitled to pursue a civil action."  (Final Statement of Reasons, *supra,* at p. 8; cf.

the Legislature's intention that notice by ordinary first class mail would no longer be effective under the statute").

*Holm v. City of San Diego* (1950) 35 Cal.2d 399, 401 [where purpose of statute was to allow city officials to investigate merits of claim, providing " 'an address . . . at which or through which the claimant may be found' " was substantially compliant]; *Uttley v. City of Santa Ana* (1933) 136 Cal.App. 23, 25 [claim that failed to disclose claimant's address was substantially compliant where it "set forth the name of the plaintiff and the name and office address of his attorney"].)

**DISPOSITION**

The judgment is reversed. The matter is remanded with directions to the trial court to vacate its order granting defendants' motion for judgment on the pleadings and enter a new order denying it. Chemical Toxin Working Group, Inc. shall recover its costs on appeal.

**CERTIFIED FOR PUBLICATION**



ADAMS, J.


We concur:



EDMON, P. J.



HANASONO, J.

28